In re Calvin W. SCOTT, Judith C. Scott, Debtors.

No. 183–00469(D).

United States Bankruptcy Court, W.D. Kentucky.

March 1, 1984.

Sandra D. Freeburger, Sebree, Ky., for debtors.

Henry Dickinson, Glasgow, Ky., for creditor.

MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

Seventy-seven days before filing in Chapter 11 these farmer-debtors gave a crop lien

to secure prior loans, and shortly after filing they commenced a lawsuit against the same creditor to recover the money equivalent of the security interest voluntarily given, $69,000, intending to use the money for operating capital in Chapter 11.

Now, almost five months into the Chapter 11 proceeding, the debtors move for an extension of the exclusive time within which to file a plan, pointing to their pending litigation as the reason. It is that motion we consider.

The debtors maintain that the formulation of a meaningful plan must necessarily await the court's adjudication of the preference litigation they have initiated.

To anticipate for a moment the more substantive questions raised by the litigation, we take this occasion to reflect on the crucial nexus between a debtor's reorganization intentions and the resolution of litigation pending by or against him.

Insofar as creditor litigation is symptomatic of any business difficulty in its advanced stages, it is predictable that most Chapter 11 debtors find themselves enmeshed in the courts. Neither is it uncommon for Chapter 11 petitioners to bring with them lawsuits against others to recoup prior losses or otherwise benefit the ailing business.

We assume, then, that the ordinary Chapter 11 debtor brings with him litigation, or the potential for it, of sundry and diverse content. Beyond that assumption it devolves upon the court to dispose of such litigation as may be properly within its jurisdiction. In so doing, an insightful court will attempt to distinguish between litigation which is only symptomatic and that which is causative of the Chapter 11 proceeding.

A prudent court also must carefully approach the adjudication of suits by or against the debtor, whether symptomatic, causative or otherwise, the outcome of which will have a predominating effect on the debtor's prospects for success or failure in Chapter 11.

Because this court sits as primary arbiter of federal rights which are weighed in favor of debtors, the court must always be sensitive to ethical questions of debtor favoritism. A case could be made for the removal of substantive litigation to a purely impartial forum, or the transfer of such matters to a judge other than the one presiding over the basic administration of the Chapter 11 proceeding. But with the mandates of jurisdiction and the limitations of judicial manpower being such as they are, this ethical ideal is not, alas, attainable.

The debtor's preference litigation before us carries with it the seeds of the ethical dilemma to which we have alluded. The only way the court can avoid that dilemma is to scrupulously treat this lawsuit and the formulation of a plan as separate and distinct questions. If what appears to be a reorganization turns out to be in reality nothing but a lawsuit, then the debtor needs not a reorganization court, but a pure adversary forum; nor can the debtor be heard to complain if the basic nature of the proceeding is changed by his own action. Upon this sort of functional metamorphosis we have had recent occasion to remark at some length.[1]

The preference litigation which this debtor regards as crucial to his success probably stretches bankruptcy preference theory to its most distant border. Here the attempt is not to recapture a preference for the purpose of equal treatment for equal claimants, but to create working capital. Here the effort is not to recoup a cash payment, but to convert a prebankruptcy lien into instant cash. It is one thing to recapture a preferential transfer *in kind;* it is quite another to attempt the recapture of the *cash value* of a preferential lien. Absent the granting of a replacement lien of equal value—an adequate protection issue that has not been presented in the pending litigation—there is nothing in preference law to support the latter theory. In its present posture the debtor's demand is for a form of bootstrap financing not within the con-

---

1. *In re Hickman,* 34 B.R. 310 (Bkrtcy.W.D.Ky. 1983).

templation of the preference statute, 11 U.S.C. § 547.

Further, the debtor constructs a schematic for indefinite debt avoidance that is too clever to succeed: (a) borrow money and fail to timely repay it; (b) give a lien to secure the overdue indebtedness; (c) within 90 days file a Chapter 11 petition; (d) then commence a lawsuit which, if successful, would convert a senior debt into an operating asset; (e) let the 120-day protective period run its course; (f) characterize the lawsuit as central to the overall scheme of reorganization, and (g) thereby obtain an extended moratorium of creditor pressure while shifting to the judge, in a practical sense, the responsibility for forging a reorganization. We cannot allow it.

None of the foregoing should be considered as dispositive in any way of the merits of the pending litigation. It will be, as we have said, disposed of on its own merits and in due course.

But it will not, for the reasons we have given, be permitted to stand as a substitute for the filing of a debtor's plan. By overruling the present motion for an extension of time we do not in the least prejudice that right nor dilute that duty. We simply permit other parties to the proceeding to come forward with alternative plans of their own or motions to dismiss.

The motion for an extension of time is therefore OVERRULED. This is a final order.