**In re SOUTHWEST OIL COMPANY OF JOURDANTON, INC., Debtor.**

**In re Paul A. GROTHUES and Marilyn Grothues, Debtors.**

**In re P.A.G., INC., d/b/a Southwest True Value, Debtor.**

**Bankruptcy Nos. 87–50746–A, 87–50747–A, 87–50745–A.**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

Nov. 3, 1987.

Dean Green, San Antonio, Tex., for debtors.

## MEMORANDUM OPINION

R. GLEN AYERS, Jr., Chief Judge.

### I. *Introduction*

These interrelated debtors filed petitions under Chapter 11 of the Bankruptcy Code,

on March 30, 1987. Their exclusive right to file plans, as provided by 11 U.S.C. § 1121(b) would have expired on July 28. Being unable to submit plans of reorganization, the debtors filed motions for extension on July 16, 1987. 11 U.S.C. § 1121(d). The motions sought to extend the exclusivity deadline until November 25, 1987. On July 30, 1987, several creditors filed responses objecting to the requested extensions, and the Motions were set down for hearing in due course.

The debtors allege that they have been unable to formulate their plans due to extensive time spent in litigation with these same creditors who object to an extension of the exclusivity period. Further, the debtors allege that resolution of that litigation, now pending in federal district court, is necessary in order to formulate their plans. The debtors also allege that the objecting creditors wish to submit their own plan in order to prevent the federal litigation from going forward.

In that pending lawsuit, the debtors allege that the objecting creditors have violated the Bank Anti–Tying Act (12 U.S.C. §§ 1971 et seq.); the RICO Statutes (18 U.S.C. §§ 1961, et seq.); and have committed fraud, breached contracts, and committed other evils upon the debtors. The lawsuit is complicated and discovery has just commenced. The debtors are probably correct when they assert that any plan proposed by these creditors (presuming the exclusivity period is not extended) would be a liquidation plan. They are also probably correct in their assumption that such a plan would not contemplate funding the pending lawsuit.

## II. *Finding of Fact and Conclusions of Law*

### A. The Law Does Not Favor Extensions of the Exclusivity Period and Courts May Not Routinely Grant such an Extension.

A court considering a motion to extend the 120–day period, during which the debtor has an exclusive right to file a plan of reorganization, should not routinely grant an extension. It should act only where cause is shown. *In re Parker Street Florist & Garden Center, Inc.*, 31 B.R. 206, 207 (Bankr.D.Mass.1983). Courts considering the question of whether to extend the exclusivity period have not favored extensions of the 120–day period, a position supported by the legislative history. *Id.*

The legislative history indicates that the 120–day period was created to remedy the disparate bargaining power that existed in favor of a bankrupt under Chapter XI of the former Bankruptcy Act; old Chapter XI gave the bankrupt an exclusive right to propose a plan. *Id.* (citing H.R.Rep. No. 595, 95th Cong. 1st Sess. 131, 231–32 (1977) and S.Rep. No. 989, 96th Cong. 2d Sess. 118 (1978)), U.S.Code Cong. & Admin.News pp. 5787, 5904, 6092, 6190–6192. However, Congress also expressly recognized the problems faced by creditors where a debtor unreasonably delays proposing a plan of reorganization. *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 372 (5th Cir.1987) (dictum) *cert. granted*, —— U.S. ——, 107 S.Ct. 2459, 95 L.Ed.2d 868 (1987).

The 120–day exclusivity period then represents a compromise between the dual goals of giving the debtor time to reorganize and protecting the creditors' legitimate interests. A bankruptcy court, considering whether to extend the exclusivity period, should consider these twin legislative goals. It should avoid reinstituting the imbalance between the debtor and its creditors that characterized proceedings under old Chapter XI. *Id.* "Section 1121 was designed, and should be faithfully interpreted to limit the delay that makes creditors the hostage of Chapter 11 debtors." *Id.*

### B. Debtor has the Burden of Proof in Showing Cause to Extend the Exclusivity Period.

A debtor seeking to extend the 120–day exclusivity period bears the burden of proof and must show that cause exists for granting an extension. *In re Tony Downs Foods Co.*, 34 B.R. 405, 407 (Bankr.D.Minn.

1983); *In re Ravenna Industries, Inc.*, 20 B.R. 886, 889 (Bankr.N.D.Ohio 1982).

■ In the instant case, the debtors have done more than merely allege that they have been working to formulate a plan or plans but have been unable to do so. They have shown clearly that they are engaged in complex litigation, the outcome of which is crucial to any plan formulation. The "recitations of allegations" are sufficient to support a motion for an extension where supported by copies of pleadings and other evidence. Here the pleadings and inferences easily drawn from those pleadings are sufficient to require the court to go forward. However, the debtors have only crossed the threshold by stating a *"prima facie"* case. As set forth below, however, the debtors' "prima facie" pleading is not supported by the facts.

1. *Debtor Must Demonstrate Ability to Propose a Viable Plan even if an Extension is Granted.*

■ The debtor in a Chapter 11 case is also required to demonstrate that there is a reasonable probability that it will be able to propose a plan that will result in a successful reorganization within a reasonable time. *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr.E.D.Pa.1986). Some promise of probable success in formulating such a plan of reorganization is an element of cause for an extension of the exclusivity period. *Id.; In re Swatara Coal Co.*, 49 B.R. 898 (Bankr.E.D.Pa.1985); *In re Manzey Land & Cattle Co.*, 17 B.R. 332 (Bankr. D.S.D.1982). A reasonable probability cannot be grounded solely on speculation. The Code requires the debtor to prove that an effective reorganization is possible. *In re Craghead*, 57 B.R. 366, 370 (W.D.Mo.1985).

In virtually every case where an extension has been granted, the debtor has shown substantial progress has been made in formulating a plan during the first 120 days. For example, in *In re Perkins*, 71 B.R. 294 (W.D.Tenn.1987), the court allowed an extension for soliciting acceptances because the debtor had shown extraordinary diligence in structuring a plan acceptable to the bulk of the creditor body,

and because there was a reasonable probability that the debtor could be rehabilitated through the plan. *Id.* at 300. Likewise, in *Pine Run Trust*, substantial progress had been made in negotiations between the debtors, who operated a retirement community, and a residents' committee. The negotiations, which were critical to a successful reorganization, were to conclude shortly, increasing the probability of success of the forthcoming Plan. *Pine Run Trust*, 67 B.R. at 435. The opposite result was reached by the court in *In the Matter of American Federation of Television and Radio Artists*, 30 B.R. 772, 774 (Bankr.S.D. N.Y.1983), where the court concluded that the debtor's motion to extend the exclusivity period should be denied because the debtor had not made a showing that it could successfully reorganize if the exclusivity period were extended.

Here, the debtors have made a showing that they are perhaps capable of successfully reorganizing if the exclusivity period is extended. The operating reports reflect that the debtors are earning profits, paying current liabilities, and making payments to secured creditors. One debtor is paying one of the objecting creditors $7,000.00 per month as adequate protection for use of equipment. With this postpetition record, the debtors have at least demonstrated some ability to reorganize.

Conversely, the debtors have taken no steps to formulate a plan. Instead, the debtors insist that the time spent on litigation has prevented any such effort. They also continue to argue that the litigation outstanding will determine any plan. The Court also notes that the three debtors are not servicing any other secured or unsecured debt except as required under the adequate protection order.

2. *The Instant Case is Not an Unusually Large or Complex Case Sufficient to Warrant an Extension.*

One traditional ground for cause often cited by debtors is the "unusually" large size of the debtor and the related difficulty in formulating a plan of reorganization.

*Pine Run Trust,* 67 B.R. at 435; *American Federation,* 30 B.R. at 774. Indeed, the legislative history indicates that Congress believed that 120 days would be adequate in most cases to give the debtor time to negotiate a settlement, but that an extremely large company would probably need an extension. H.R.Rep. No. 595, at 231–32. It is clear from the legislative history that Congress intended an extension to be granted only in unusual circumstances, involving very large or complex cases.

The *American Federation* court found that the debtor's reorganization did not involve an unusually large case within the meaning of the legislative history, and that cause to extend the exclusivity period did not exist on that ground. 30 B.R. at 774. The *American Federation* case involved approximately twenty creditors and separate litigation in which an appeal from a $10,500,000 judgment was pending.

An example of a case sufficiently large and complex enough to justify an extension of the exclusivity period is *In re United Press Int'l, Inc.,* 60 B.R. 265, 269 (Bankr.D. D.C.1986). This case involved major conflicts between management and owners, and management and labor, which were resolved only after intensive court-sponsored negotiations. The debtor was a 40 million dollar company requiring a multi-million dollar line of credit, a variety of insurance coverages, and worldwide telecommunications services involving almost 100 separate utility companies. *Id.* at 269. In another case, *In re Perkins,* the court held that the reorganization was sufficiently large to justify an extension, where there were approximately 100 creditors holding 225 claims against the estate. 71 B.R. at 296.

*United Press* and *Perkins* are easily distinguishable from the instant case, in that no similar factors exist in the case at bar. The size and complexity of the instant case is more analogous to *American Federation,* where the court held that cause did not exist to extend the exclusivity period. The instant cases involve few creditors.

The objecting creditors are the primary creditors.

The Debtor in Possession Operating Reports for the debtors indicate that the dollars involved in these cases are not large. Total assets for the three debtors are valued at $3,700,000.00. These figures, with the limited number of creditors, dictate that these cases are neither unusually large nor unusually complex within the meaning of the legislative history. Therefore size and complexity do not justify an extension.

3. *The Fact that Debtors are Engaged in Litigation With Its Creditors as Cause to Extend the Exclusivity Period.*

■ The ordinary Chapter 11 debtor is expected to bring with it litigation, or the potential for it. *In re Scott,* 37 B.R. 184, 185 (Bankr.W.D.Ky.1984). Litigation with creditors is not an unusual circumstance, and the fact that litigation is pending with creditors is not in itself sufficient cause to justify an extension of the exclusivity period. *Id.* at 186; *American Federation,* 30 B.R. at 774.

■ Only under extreme circumstances would the existence of litigation constitute cause for an extension, where the mass, weight, volume and complication of the litigation may justify a "shakedown" period. *In re Manville Forest Products Corp.,* 31 B.R. 991, 995 (S.D.N.Y.1983). For example, the *Manville* case involved 20 subsidiaries, including Johns–Manville Corporation, an asbestos producer facing multiple lawsuits and possible liability of $2 billion for asbestos-related personal injuries and illnesses. Unsecured creditors held over $90 million of debt in only one of the subsidiaries involved. Given the number and complexity of the court filings related to the personal injury suits, the court allowed an extension of the exclusivity period. However, absent these unusual circumstances, the mere existence of litigation does not constitute cause for extension.

In these cases, none of the unusual or exigent circumstances characterizing the *Manville* litigation exists. The litigation in

the instant case is no more than predictable creditor litigation, symptomatic of any business difficulty in its advanced stages. Both the *Scott* and *American Federation* courts found that this type of litigation did not constitute cause for an extension of the exclusivity period. *Scott,* 37 B.R. at 185–86; *American Federation,* 30 B.R. at 774.

■ Furthermore, much of the litigation in the instant case was initiated by the debtors. The debtors should not be allowed to substitute a lawsuit for the filing of a plan, by fostering litigation and then requesting an extension of the exclusivity period on the grounds of the pending litigation. *Scott,* 37 B.R. at 186.

In addition, the debtors have retained separate counsel for the specific purpose of handling all litigation matters. In light of this fact, the debtors cannot in good faith complain that they have not had time to formulate a plan due to time bankruptcy counsel has spent in litigation. Were this court to grant an extension based solely upon the fact that there is pending, crucial litigation, the court would be in error. Speed is the thrust of the 1978 Reform Act, as it pertains to reorganization under Chapter 11. Delay to allow debtor-creditor litigation is simply not permissible except in the most extraordinary circumstances.

### C. Debtor's Financial Condition may be Deteriorating, and Granting an Extension in This Case Would Therefore Jeopardize the Creditors' Legitimate Interests.

Even were these debtors to have sustained their burden under § 1121(d), the Court must also balance potential harm to creditors when determining whether to grant an extension.

The court in *Ravenna* cited as one of its reasons in denying an extension of the exclusivity period the deterioration of the debtor's cash position. 20 B.R. at 890. As in *Ravenna,* the Debtor's financial position in the instant case has deteriorated during the 120–day exclusivity period, and will likely continue to deteriorate.

On April 2, 1987 a federal Tax Lien was filed against Paul A. Grothues, d/b/a/ Southwest Administrative. The language of this lien provides that it is "in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes...." Paul and Marilyn Grothues are the owners and sole shareholders of the other two debtors. The tax lien filed against Paul Grothues individually may therefore attach against any rights Paul Grothues has in all assets of the other two debtors, in addition to attaching against all other assets owned by Paul and Marilyn Grothues. The filing of this tax lien provides some evidence that the Debtor's financial condition has deteriorated during the 120–day exclusivity period.

### D. Debtor's Motive in Requesting the Extension.

■ The Court should also determine or attempt to determine the debtor's motives in requesting an extension under § 1121(d) even where the debtor sustains its burden of proof. A debtor may not employ an extension as a tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory. *Parker,* 31 B.R. at 207. In *Parker,* the debtor attempted to prevent a creditor from interfering with the debtor's reorganization and proposal of a plan. The court found this to be an impermissible motive, not sufficient to establish cause to extend the exclusivity period. *Id.* Likewise, in *In The Matter of Lake in the Woods,* the court held that extensions are impermissible if they are for the purpose of allowing the debtor to prolong reorganization while pressuring a creditor to accede to its point of view. 10 B.R. 338, 345–46 (E.D.Mich.1981). Debtors may not use an extension to "drag out the reorganization ... and pressure the creditor for concession in the status of its rights." *Id.* at 346.

The Debtors in the instant case do not appear to be impermissibly using the requested extension as a device to unreasonably delay the reorganization, and to pressure their creditors. While the debtors may not have entered into good faith negotiations with their creditors, delay may be

properly attributable to the pending litigation. While this litigation may not justify extension, its resolution may well be necessary for the formulation of a plan.

 E. Denying An Extension in This Case Does Not Prejudice Debtor's Concurrent Right to File a Plan.

 Denying an extension in this case does not affect the debtors' ongoing right to file a plan. The fact that the debtors no longer have the *exclusive* right to file a plan does not affect their concurrent right to file a plan. *Parker*, 31 B.R. at 207. By denying the extension, the Court does not prejudice the debtors' co-existent right, nor dilute the debtors' duty to file a plan. The other parties are simply allowed to protect their interests by coming forward with alternative plans or motions to dismiss. *Scott*, 37 B.R. at 186.

 Section 1121 does not create a deadline for filing a plan. The debtors may develop and file their plan or plans as they feel appropriate. The risk that while the debtors are developing their plan, another party in interest may file a plan, is a risk that Congress intended, so as to preserve the balance between a debtors' needs and the legitimate interests of creditors. *Tony Downs*, 34 B.R. at 408. Further, if the debtors' concerns are correct, and the objecting creditors file a plan which would prevent the debtors from going forward with the pending lawsuit, the debtors and other creditors can object to confirmation on any number of grounds. Filing such a plan does not guarantee confirmation.

*Conclusion.*

 In conclusion, while the debtors have presented a prima facie case, the facts do not justify extension of the exclusivity period. Prevailing counsel will draw an appropriate order.