In re Lawrence and Cheryl IORIZZO et al., Consolidated Debtors.

Thomas J. LOPRESTO, as Trustee, Agway Petroleum Corp., Ashland Oil, Inc., Patchogue Oil Terminal Corporation, Merrill Lynch Futures, Inc., Sun Refining and Marketing Company, The Wisser Co., and Lynch International, Inc., Plaintiffs,

v.

DEPARTMENT OF REVENUE, STATE OF FLORIDA, Defendant.

No. 89 CV 3245.
Bankruptcy Nos. 883–31066–20 and 883–31293 to 883–31297–20.
Adv. No. 889–0129–20.

United States District Court, E.D. New York.

Feb. 27, 1990.

Weil, Gotshal & Manges, Harvis & Zeichner, Roseman & Colin, New York City, for plaintiffs.

Kelley, Drye & Warren, New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Defendant Department of Revenue, State of Florida ("Florida") moves for an order pursuant to 28 U.S.C. § 157(d)[1] and Bankruptcy Rule 5011(a) withdrawing the reference of this adversary proceeding instituted by plaintiffs Lopresto, as Trustee (the "Iorizzo trustee"), Agway Petroleum Corporation, Ashland Oil Inc., Patchogue Terminal Corporation, Merrill Lynch Futures, Inc., the Sun Refining and Marketing Company and the Wisser Co., Inc. (collectively the "plaintiff creditors") and Lynch International, Inc. ("Lynch") from the United States Bankruptcy Court for the Eastern District of New York to the United States District Court for the Eastern District of New York. According to defendant, the basis for such a withdrawal is that the bankruptcy court is without jurisdiction over this matter. According to defendant, there is a significant question involving defendant's Eleventh Amendment sovereign immunity and hence since the Eleventh Amendment is a law of the United States, mandatory withdrawal is required. Further, defendant argues that even if mandatory withdrawal is not required, the doubtfulness of the Bankruptcy Court's jurisdiction because of both the sovereign immunity question and the possibility that the property at issue is not properly part of the estate constitutes good cause and hence permissive withdrawal is appropriate. As discussed below, we hold that a significant question involving defendant's Eleventh Amendment sovereign immunity does not exist and that defendant has not presented evidence to establish that the property was not part of the estate and thus, withdrawal of the reference is not appropriate.

## BACKGROUND

In August, 1982, certain of the plaintiff creditors filed an involuntary Chapter 7 (liquidation) petition against debtor Iorizzo's corporation Vantage Petroleum ("Vantage"). By order, dated August 23, 1982, the E.D. Bankruptcy Court, upon Vantage's request, converted the involuntary Chapter 7 petition into one under Chapter 11 (reorganization). In September, 1982, the E.D. Bankruptcy Court appointed Hudtwalker as trustee for Vantage. Later that month, the Court appointed the official unsecured creditors committee ("Vantage Committee") for the debtor pursuant to § 1102(a) of the Bankruptcy Code. All the

---

1. 28 U.S.C. § 157(d) provides:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

plaintiff creditors or their predecessors in interest are members of the Vantage Committee.

In May, 1983 Lawrence and Cheryl Iorizzo filed a petition for reorganization under Chapter 11. The Iorizzos had apparently owned and/or controlled Vantage. In June, 1983, petitions for reorganization under Chapter 11 were filed by Bay Isle Oil Company, Inc., Larch Oil Company, Inc., Sansouci Corporation, Page Motors, Inc. and Larch Resources (the "Iorizzo corporations"). These companies were apparently also owned and/or controlled by the Iorizzos.

On July 20, and August 11, 1983, the Court appointed trustees for the Mr. & Mrs. Iorizzo estate and the Iorizzos' corporations estates, respectively. Subsequently these estates and their reorganizations were consolidated. (hereinafter the "Iorizzo estates".)

In November, 1983, Mr. Iorizzo was indicted in the Eastern District of New York for defrauding New York and New Jersey out of fuel taxes in excess of $1,000,000.00 and defrauding Ashland out of large quantities of gasoline.

On April 23, 1984, the E.D. Bankruptcy Court entered an order directing that any creditor holding claims against Iorizzo estates file them by May 18, 1984 or forever be barred from receiving distributions from the Iorizzo estates.

On June 16, 1984, Mr. Iorizzo fled to Panama to avoid sentencing on the E.D. N.Y. indictment.

The Vantage and Iorizzo trustees commenced investigations in an attempt to locate assets belonging to the Vantage estate and the Iorizzo estates. They were assisted by plaintiff Lynch a private investigating firm retained by order of the bankruptcy court. These investigations revealed that the Iorizzos' or entities controlled by them had deposited funds at Creditanstalt Bankverein and Bankhaus Feichtner & Company in Austria (the "Austrian Funds"). In July, 1984, the trustees commenced proceedings in Austria seeking to recover the Austrian funds. On September 21, 1984, an Austrian appellate court affirmed a lower court's decision that the Trustees lacked standing in Austrian courts to recover the funds.

In February, 1985, the trustees requested that criminal letters rogatory be issued by the U.S.D.C. for the E.D.N.Y. These letters were issued and on February 13, 1985 the Austrian Ministry of Justice successfully petitioned the Austrian court for an order freezing the Austrian funds.

An action was instituted in the Austrian courts in the name of the creditors, who unlike the trustees, had standing. Prior to the commencement of this action, the trustees agreed with the plaintiff creditors which represented 90% of all creditor claims filed against the Iorizzos, that of the Austrian funds recovered 15% were to be paid to Lynch for compensation, 5% were to be paid to the Vantage estate, 20% were to be paid to the Iorizzo estates, and the remaining proceeds were to be divided among the creditors. Stipulations memorializing this agreement were signed between the trustees and each of the plaintiff creditors. These stipulations were approved by order of the Bankruptcy Court dated March 26, 1985.

On April 22, 1985, the E.D. Bankruptcy Court allowed creditors claims against Iorizzos in specified amounts totalling approximately $12,200,000.00.

In June, 1985, Mr. Iorizzo was taken into custody by Panamanian authorities and returned to the United States.

In July 1985, the plaintiff creditors, the Iorizzos, the trustees and the Vantage Committee agreed to a settlement pursuant to which approximately 11.1 million of the Austrian funds would be returned for distribution to the plaintiff creditors, the Vantage estate, the Iorizzo estates, and certain other parties. On July 22, 1985, an order of the Bankruptcy Court approved this settlement agreement which provided for distribution of the Austrian funds to the Vantage committee, the creditors, the Vantage estate, the Iorizzo estates, Lynch and Rosemary Iorizzo (presumably a relative of Mr. & Mrs. Iorizzo).

On May 8, 1986, the E.D. Bankruptcy Court ordered the Iorizzo trustee to make distribution to unsecured creditors of Iorizzo estate, other than plaintiff creditors, equal to 47.2% of their claims against the estate. This order equalized distribution among all unsecured creditors of the Iorizzos, including the creditors.

Between 1985 and 1988, the Vantage committee and the Vantage trustee negotiated a plan of reorganization. On July 28, 1988, the Vantage Court entered an order confirming the plan.

The Iorizzo estates have also made additional interim distributions which has been approved by the E.D. Bankruptcy Court and it is expected that further distributions will be made.

In July, 1989, defendant Florida filed a complaint in a Florida State court seeking from the creditors and Lynch recovery of Austrian funds which they received pursuant to the orders of the Bankruptcy Court. The complaint alleges claims of conversion, quasi-contract, constructive trust, racketeering under a State statute, fraudulent transfer and successor tax liability.

In August, 1989, all the plaintiffs filed a petition of removal to the United States District Court for the Northern District of Florida based upon diversity of citizenship. An amended petition of removal, pursuant to 28 U.S.C. § 1452 providing for removal of claims related to bankruptcy cases, was then filed in the United States Bankruptcy Court for the Northern District of Florida.

In response to defendant's State action, plaintiffs also commenced this adversary proceeding. Plaintiffs seek entry of an order and judgment permanently enjoining and restraining defendant from prosecuting causes of action arising from the facts and circumstances alleged in the complaint filed in Florida State Court by defendant in any court but the E.D. Bankruptcy Court and a declaratory judgment that the Florida action is automatically stayed by § 362 of the Bankruptcy Code. With the filing of the complaint, plaintiffs also moved by an order to show cause for a preliminary injunction restraining and enjoining defendant from prosecuting its Florida State court action pending determination of plaintiffs' present complaint.

While this motion was pending, defendant filed a motion in the Northern District of Florida to enjoin the proceedings in the E.D. Bankruptcy Court.

On August 30, 1989, the E.D. Bankruptcy Court entered an order restraining and enjoining defendant from prosecuting the claims alleged in its Florida State court complaint in any court but the E.D. Bankruptcy Court pending determination of the complaint.

On September 7, 1989, the Northern District of Florida decided it would keep the matter pending but refused to proceed in order to avoid burdening defendant with a contempt citation for violating the E.D. N.Y. Bankruptcy Court's preliminary order.

Defendant never appealed from the E.D. N.Y. Bankruptcy Court's preliminary injunction order.

After the time to appeal expired, defendant brought this motion to withdraw the reference to the E.D.N.Y. Bankruptcy Court.

## DISCUSSION

■ Defendant argues that the reference to the E.D. Bankruptcy Court should be withdrawn because that Court is without jurisdiction. Defendant maintains that the E.D. Bankruptcy Court does not have jurisdiction over this matter because i) Florida has a Constitutional right pursuant to the Eleventh Amendment not to be subject to suit in the federal courts and the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) determined that Article I courts do not have the power to adjudicate federal rights, and ii) it involves property which was obtained by the bankrupt by fraud and hence is not part of the bankrupt's estate.

Defendant primarily argues that a bankruptcy court is without jurisdiction to adjudicate Constitutional rights since it is not an Article III court and defendant has a Constituional right at stake which must be

adjudicated in this proceeding. While a bankruptcy court has the power to issue an injunction to prevent impairment of its jurisdiction or to enforce its prior orders,[2] the Eleventh Amendment, defendant maintains, prohibits such an injunction against a State. According to defendant, a State may invoke its right of sovereign immunity guaranteed by the Eleventh Amendment against such an injunction unless that State has filed a notice of claim and here, Florida has not filed a notice of claim.[3]

Defendant is mistaken. The Eleventh Amendment which protects states from suits for monetary recovery is inapplicable here. Under 22 U.S.C. § 2283 [4] as authorized by 11 U.S.C. § 105 [5] bankruptcy courts may "grant an injunction to stay proceedings in a State court ... to protect or effectuate its judgment" (28 U.S.C. § 2283) or any of its orders or processes (11 U.S.C. § 105). This power, according to 2 Colliers on Bankruptcy ¶ 105.02 extends to state officials or agencies citing *Schatz-*

*man v. Department of Health and Rehabilitative Services,* 4 B.R. 704, 2 C.B.C.2d 639 (B.Ct., S.D.Fla.1980). Moreover, the notes of the Committee of the Judiciary, Senate Report No. 95–959, U.S.Code Cong. & Admin.News 1978, p. 5787 specifically state that Section 105 of Title 11 is an authorization for a court of the United States to stay the action of a State court.

The recent case of *Hoffmann v. Connecticut Department of Income Maintenance et al.,* —— U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) relied upon by defendant does not modify or change these statutory powers to enjoin a State agency or official. There, the Court only held that 11 U.S.C. § 106(c) [6] did not abrogate the States immunity from *monetary recovery* and in fact stated that "the language of Section 106(c)(2) is more indicative of declaratory and injunctive relief than of monetary recovery." *Id.*

■ Defendant also argues that the Bankruptcy Court is without jurisdiction

---

**2.** *see* 11 U.S.C.A. § 105; *Matter of Askew,* 61 B.R. 87 (Bkrtcy.S.D.Ohio 1986).

**3.** Plaintiffs also argue that defendant has waived its sovereign immunity by asserting a claim against plaintiffs in the Florida State court. According to defendants, 11 U.S.C.A. § 106(a) which provides that a governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that involves property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose should be interpreted to mean that it is not necessary that a formal proof of claim be filed for a waiver of sovereign immunity to be effective but rather if the governmental unit asserts any claim against the estate then it has waived its sovereign immunity. *See In re Inslaw, Inc.,* 76 B.R. 224 (Bankr.D.D.C.1987). Here, even if we accepted plaintiff's interpretation of § 106(a), plaintiff's have the additional problem that defendant's claim in the Florida State court is not formally asserted against the estate but rather creditors of the estate. While there is a certain logic to plaintiff's argument that defendant should not be able to avoid the consequences of asserting a claim against the estate simply by waiting until the estate has been distributed, we need not reach the issue of whether defendant has waived its sovereign immunity because we find that the sovereign immunity protected by the Eleventh Amendment is not at issue here.

**4.** 22 U.S.C. § 2283 provides that a court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

**5.** 11 U.S.C. § 105 provides that:
(a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.
(b) Notwithstanding subsection (a) of this section, a bankruptcy court may not appoint a receiver in a case under this title.

**6.** 11 U.S.C. § 106(c) provide that:
(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.
(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.
(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and
(2) a determination by the court of an issue arising under such a provision binds governmental units.

24

because the monies in question were stolen Florida tax monies and thus not properly part of the bankrupt's estate. While the law is clearly established that property obtained by fraud is not part of the bankrupt's estate,[7] this rule is based on a policy that property should remain in the hands of the rightful owner and hence it is generally required that the defrauded person trace his money to where the cestui que trustent applied it. *In re Teltronics, Ltd.,* 649 F.2d 1236, 1239 (7th Cir.1981) *citing Cunningham v. Brown,* 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924). The tracing rule may be avoided if abandoning the rule will result in equal treatment because "equality is equity and ... this is the spirit of the bankruptcy law." *In re Teltronics, Ltd.,* 649 F.2d 1236, 1239 (7th Cir.1981) *quoting Cunningham v. Brown,* 265 U.S. at 13, 44 S.Ct. at 427.

■ Here, defendant maintains that from December, 1983, until September, 1984, Iorizzo and his associates collected and stole approximately $4,600,000.00 of Florida fuel and sales tax monies. According to defendant, Iorizzo used other companies he owned and controlled including Houston Holdings, Inc. Houston Trading Company, Inc. and Blue Bell Trading Company to steal the Florida tax monies. Any monies stolen from defendant in this manner are certainly not part of the bankrupt's estate.

■ Defendant has the burden of tracing the monies which were stolen and thus establishing that certain monies included in the bankrupt's estate did not actually belong to the estate. According to defendant, Iorizzo used a complex series of bank transactions to deposit not less than $2,970,000.00 in Blue Bell's account at Creditanstalt Bankverein ("Bankverein") in Vienna, Austria and an additional $1,050,-000.00 in cash by Iorizzo outside ordinary banking channels. Defendant maintains that the money was then transfered to numbered Bankverein accounts, withdrawn in cash and then redeposited in 22 different numbered accounts at Bankeverein and

three numbered accounts at Bankhaus Fechtner and Company in Vienna, Austria. However, defendant does not demonstrate that it has traced its stolen tax money to that money which was obtained through the Austrian proceedings and distributed to plaintiffs under the settlement orders. Since it seems likely that some of the Austrian funds that were obtained by plaintiffs might have been defendant's tax monies, this may appear to be a case in which the strict tracing rule should not be applied. However, in light of the fact that defendant was aware of the proceedings in the E.D. Bankruptcy Court and did not seek to intervene and assert its claims at any earlier date, it seems defendant has been less than equitable and thus may not now seek equity.

In conclusion, defendant's basic premise for withdrawing the reference, i.e., that the Bankruptcy Court lacks jurisdiction, is incorrect and thus, the reference will not be withdrawn. Defendant has failed to meet the standard for either mandatory or permissive withdrawal of the reference and hence, defendant's motion must be and hereby is denied.

SO ORDERED.

7. *In re Teltronics, Ltd.,* 649 F.2d 1236, 1239 (7th Cir.1981); *In re Paragon Securities Co.,* 589 F.2d 1240, 1242 (3rd Cir.1978); *Nicklaus v. Bank of Russellville,* 336 F.2d 144, 146 (8th Cir.1964).