**In re M & L BUSINESS MACHINE CO., INC., Debtor.**

**Christine J. JOBIN, Trustee of M & L Business Machine Co., Inc., Plaintiff–Appellee/Cross–Appellant,**

v.

**YOUTH BENEFITS UNLIMITED, a Colorado corporation, Defendant–Appellant/Cross–Appellee.**

Civ. A. No. 93–K–656.
Bankruptcy No. 90 15491 CEM.
Adv. No. 91 1616 SBB.

United States District Court,
D. Colorado.

Feb. 16, 1994.

Jeffrey Weinman, William Richey, Jeffrey A. Weinman, P.C., Denver, CO, for plaintiff-appellee/cross-appellant.

Christine J. Jobin, Dana M. Arvin, The Jobin Law Firm, Denver, CO, for defendant-appellant/cross-appellee.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This is an appeal and cross-appeal from the bankruptcy court's decision in an adversary proceeding under 11 U.S.C. § 549 to recover post-petition transfers. Appellant Youth Benefits Unlimited argues that the bankruptcy court erred in holding that a $40,000 post-petition payment it received from M & L Business Machine Co., Inc. ("Debtor") was property of the estate and in not permitting it to set-off from that amount a $20,000 post-petition loan it made to the Debtor. Appellee/Cross–Appellant Christine J. Jobin, trustee for the Debtor ("Trustee"), argues that the court erred in holding that a $50,000 post-petition payment Youth Benefits received from Robert G. Joseph, a principal of the Debtor, was not property of the estate. I affirm.

### I. *Facts.*

The facts of this case are essentially undisputed. Youth Benefits was one of many investors in the Debtor's Ponzi scheme. In September 1990, Youth Benefits made investments in the Debtor through its president, Gerald Dittmer, receiving in return two checks post-dated to October 1, 1990 in the face amount of $20,000. The checks were drawn against the Debtor's pre-bankruptcy operating account.

The Debtor filed its bankruptcy petition on October 1, 1990. Dittmer deposited the two checks in Youth Benefits' account that day; three days later he was informed by the bank that they were returned for insufficient funds. According to Dittmer, he telephoned Joseph and was told there would be no problem with the payment. On October 5, 1990, Dittmer obtained from Joseph a cashier's check payable to Youth Benefits in the face amount of $40,000, drawn on the Debtor's post-bankruptcy debtor-in-possession account.

Dittmer also testified that, on October 1, 1990, intending to make another investment on behalf of Youth Benefits, he gave the Debtor an additional $20,000 in cash and checks, and that this amount has never been returned. On November 20, 1990, Youth Benefits received a cashier's check in the amount of $50,000 drawn on a Bank of Boulder account in Joseph's name. Joseph purportedly made this payment to reduce the total amount the Debtor owed to Youth Benefits, which at that time was allegedly more than $150,000.

On August 14, 1991, the Trustee filed an adversary proceeding under § 549 of the Code, seeking to recover from Youth Benefits the $40,000 it received on October 5, 1990. On July 13, 1992, she amended her complaint to add an additional claim for the $50,000 Youth Benefits received from Jo-

seph's account on November 20, 1990 on the basis that it, too, was an unauthorized post-petition transfer. Youth Benefits answered, denying that either payment was property of the estate. Alternatively, Youth Benefits asserted that if it was required to turnover these sums, they should be reduced by the $20,000 it never received in connection with the October 1 loan it made to the Debtor. As to the $50,000 payment, Youth Benefits further argued that it was entitled to a good faith defense under § 550.

On December 10, 1992, the bankruptcy court entered judgment in favor of the Trustee on her claim for recovery of the $40,000 payment, but denied her claim as to the $50,000 payment. It also rejected Youth Benefits' request for a $20,000 setoff. Both parties now appeal.

There is an interesting procedural twist to this case, one which neither party addresses adequately. After the Trustee commenced this adversary proceeding, Youth Benefits moved for withdrawal of the reference based on its demand for a jury trial. The bankruptcy court initially considered the motion and denied it. Recognizing that the motion was more properly heard by the district court, the bankruptcy court modified its decision, deeming it a recommendation on the motion, and forwarded the motion to the district court.

When the motion to withdraw the reference reached the district court, it was assigned to Judge Carrigan as Civil Action No. 91–C–1923. On March 13, 1993, Judge Carrigan entered an order denying the motion, holding that Youth Benefits had no right to a jury trial on the Trustee's § 549 claim. On April 27, 1992, Youth Benefits moved for certification of the district court's order under 28 U.S.C. § 1292 and for stay of the adversary proceeding pending appeal.

The record is not clear about what happened next. From what I can tell, Judge Carrigan never ruled on the motion for certification and for stay pending appeal. Yet, despite the apparent pendency of the motion, the adversary proceeding went forward in the bankruptcy court and proceeded to judgment, resulting in the instant appeal. Even the joint pre-trial order entered in this case references the pending motion for stay.

Apparently unsure of how to proceed as to the denial of its motion to withdraw the reference, Youth Benefits raises again the issue of its right to a jury trial in this appeal. That matter is not properly before me, as only the court of appeals may consider the propriety of Judge Carrigan's ruling on the motion to withdraw the reference. Even if it were, Judge Carrigan's ruling is consistent with other opinions denying the right to a jury trial on a § 549 claim, including one I issued. *See, e.g., Keller v. Blinder (In re Blinder, Robinson & Co.),* 146 B.R. 28, 31 (D.Colo.1992); *Global Int'l Airways Corp. v. Azima (In re Global Int'l Airways Corp.),* 81 B.R. 541, 544 (W.D.Mo.1988).

## II. *Youth Benefits' Appeal.*

Youth Benefits raises two issues in its appeal of the bankruptcy court's December 10, 1992 ruling. First, it argues that the Trustee failed to state a claim under § 549 because the payments she sought to recover were not property of the estate. Youth Benefits claims that, since M & L was concededly operating a Ponzi scheme, all of the proceeds from that scheme (constituting the bulk of the funds in its bank accounts) were derived from fraud. Youth Benefits then relies on longstanding authority holding that one who acquires property by fraud has no title or right to such property. Therefore, under Youth Benefits' view, the money the Debtor received from its investors never became property of the bankruptcy estate.

■■■■ Youth Benefits' argument is correct as far as it goes. Generally, the recipient of property obtained by fraud does not obtain absolute title to it; instead, it may be subject to a constructive trust for the defrauded party's benefit. *See Giannone v. Cohen (In re Paragon Sec. Co.),* 589 F.2d 1240, 1242 (3d Cir.1978); *Merrill v. Dietz (In re Universal Clearing House Co.),* 62 B.R. 118, 124 (D.Utah 1986) ("[A]lthough it may be true that one who steals or embezzles money obtains no title to it, one who obtains money by fraud obtains some interest, namely defeasible title."). But contrary to Youth Benefits' view, the inquiry does not end here.

When property of the estate is alleged to be held in trust, the burden *rests upon the claimant* to establish the original trust relationship. He must prove his title, identify the trust fund or property, and where the fund or property has been mingled with the general property of the debtor, the claimant must sufficiently trace the property.

4 *Collier on Bankruptcy* ¶ 541.13 at 541–76 to –77 (L. King 15th ed. 1993) (emphasis added; footnote omitted); *see also Majutama v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 142 B.R. 633, 637 (S.D.N.Y.1992) (citing "hornbook law" that claimant must trace his property into a product in the hands of the debtor before a constructive trust will be imposed). If he fails in this burden, however, the funds remain property of the estate. *Lopresto v. Department of Revenue (In re Iorizzo)*, 114 B.R. 19, 24 (E.D.N.Y.1990).

These principles were put into practice in one of the original Ponzi scheme cases, *Cunningham v. Brown*, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924). There the Supreme Court held that funds the debtor obtained by fraud were property of the estate because it was impossible for the many victims of the fraud to trace what had become of their payments and the funds held were insufficient to pay all potential claimants. *See id.* at 11, 44 S.Ct. at 426. Thus, the claimants were mere creditors of the estate subject to the preference provisions of the Bankruptcy Act. *Id.* at 12, 44 S.Ct. at 427. The reasoning of *Cunningham* flows from the principle that all of the victims of the fraudulent scheme should be treated equally and that "equality is equity and thus the spirit of the bankrupt law." *Id.* at 13, 44 S.Ct. at 427. Though *Cunningham* was decided in 1924, many cases since then, including a number decided under the Bankruptcy Code, have held that untraced, hopelessly commingled funds the debtor obtained by fraud are property of the estate. *See, e.g., Oxford Organisation, Ltd. v. Peterson (In re Stotler & Co.)*, 144 B.R. 385, 390–92 (N.D.Ill.1992); *In re Iorizzo*, 114 B.R. at 24; *In re Universal Clearing House*, 62 B.R. at 122–24; *Emerson v. Maples (In re Mark Benskin & Co.)*, 161 B.R. 644, 653–56 (Bankr.W.D.Tenn.1993).

One notable exception to the *Cunningham* rule of tracing occurs when, although the identification of each victim's funds may be impossible, there is a scheme already in place that will equitably protect all investors in the fraudulent scheme. This occurred in *Heyman v. Kemp (In re Teltronics Ltd.)*, 649 F.2d 1236 (7th Cir.1981), a case upon which Youth Benefits heavily relies. In *Teltronics*, the bankruptcy trustee lost its contest with a state court receiver over who would control the funds the debtor held as a result of a huge mail fraud scheme. Under state law, the receiver was empowered to take control of all of these funds, even though obtained by fraud, and to administer an equitable mechanism by which all defrauded consumers would share equally. *Id.* at 1241. The court held that abandonment of *Cunningham*'s tracing rule was appropriate in these circumstances because equal treatment of defrauded consumers was guaranteed. *Id.*

There is no such alternative mechanism in this case. The Bankruptcy Code provides the equitable procedure whereby investors in the Debtor's Ponzi scheme are treated ratably. Unlike *Teltronics*, there is no parallel state law scheme in place. Unless it can trace its payments to the Debtor and identify them among the Debtor's accounts, under *Cunningham* and its progeny, Youth Benefits is not entitled to preferential treatment over the other victims of the Debtor's fraud. Youth Benefits has made no attempt to do so in this case. At trial, it disclaimed any intent to impose a constructive trust on the Debtor's accounts. Therefore, the bankruptcy court did not err in concluding that the Trustee is empowered to administer as part of the bankruptcy estate the investor funds held by the Debtor and that Youth Benefits is subject to the requirements and restrictions of the Bankruptcy Code. *See Cunningham*, 265 U.S. at 11, 44 S.Ct. at 426 ("Thus they came into the teeth of the Bankrupt Act and their preferences in payment are avoided by it.")

■ Youth Benefits also argues that, even if the $40,000 was recoverable as property of the estate, this amount should be set-off by the amount of an additional $20,000 loan it

allegedly made to the Debtor on October 1, 1990. As to this contention, the bankruptcy court found

> that the pretrial order reflects an assertion by YBU that it made a $20,000.00 postpetition loan to the debtor. The relevance of this argument escapes the Court. It has not been briefed and there is no evidence indicating such a transfer. Therefore, the Court concludes that YBU waived any argument regarding the presumed $20,000.00 postpetition loan.

(R.Doc. 36 at 15.) Youth Benefits argues that this finding is clearly erroneous because the "stipulated Pre–Trial Order clearly indicates that there was no dispute that a $20,-000 payment had occurred on October 1, 1990." (Br. Appellant at 24.)

The pretrial order, however, states that "*[a]ccording to the Direct Testimony* [of Dittmer] dated May 14, 1992 (subsequently amended)," Dittmer made such a loan. (R.Doc. 34 at 4) (emphasis added). There was no stipulation that such a loan was made. Youth Benefits never introduced further evidence at trial to substantiate this transfer to M & L, such as a receipt or the canceled checks. Furthermore, in his written testimony, Dittmer stated that he paid these funds to the Debtor. Yet the testimony of Jayne McPhee, the Trustee's transactions expert, found evidence only of a $20,000 transfer to Joseph, not the Debtor. (Tr. at 83.) For these reasons, the bankruptcy court's finding that there was insufficient evidence to support Youth Benefits' claim of setoff, even assuming this is a legally cognizable defense to a § 549 action, was not clearly erroneous.

### III. Trustee's Cross–Appeal.

■ In her cross-appeal, the Trustee contends that the bankruptcy court erred in finding insufficient evidence that the November 20, 1990 transfer to Youth Benefits in the amount of $50,000 was property of the estate. Unlike the earlier $40,000 transfer, this transfer was not made from the Debtor's account; it was drawn on Robert Joseph's personal account. The bankruptcy court found that

> [t]he trustee has not provided any evidence that the debtor's funds were placed in Joseph's account. The tracing of various deposits to Joseph's account provided is inadequate to support a finding that the debtor's funds were the source of the $50,-000 transfer. *See* ¶ 23, *supra.* Although some M & L money was deposited from the payroll account, the bulk of the money came from "investors." Further facts are needed to support the conclusion that the investor money belonged to M & L and that the money transferred from the payroll account was not paid to employees. Therefore, even if it were legally possible to include a nondebtor's property in a debtor's bankruptcy, the trustee has failed to provide any evidence to substantiate such a conclusion.

(R.Doc. 36 at 15.) In a footnote to the final sentence, the bankruptcy court referenced cases dealing with the substantive consolidation of a nondebtor with the debtor in connection with its observation that nondebtor property might in some circumstances be included in the debtor's property. (*See id.* n. 8) (citing *In re Julien,* 120 B.R. 930 (Bankr. W.D.Tenn.1990), and *In re Munford,* 115 B.R. 390 (Bankr.N.D.Ga.1990)). It found no evidence of such a consolidation in this case. I agree with the bankruptcy court's reasoning.

The threshold issue, which the Trustee never confronted, is that she sought the recovery of transfers from an entity other than the debtor: Robert Joseph. While Mr. Joseph was intimately connected with M & L, the trustee failed to establish how § 549 permits her to make such a recovery. Instead, she simply assumed that because Joseph also received investor funds, those funds were automatically deemed property of the estate, and Joseph's postpetition transfer of any of those funds was barred by § 549. I agree with the bankruptcy court that such a finding cannot be so easily inferred based on the limited facts the Trustee introduced.

The Bankruptcy Code permits the trustee to recover a transfer avoided under §§ 544, 545, 547, 548, 549, 553(b) or 724(a) from the initial transferee and, with certain exceptions, the immediate or mediate transferee of the initial transferee. 11 U.S.C. § 550(a). Certainly, if Joseph improperly received estate monies and deposited them in his per-

sonal account, the Trustee could recover those sums from him under one of the above provisions. Had he also made improper transfers of estate property to a third party, such as Youth Benefits, she could recover the value of that property from the third party under § 550.

Here, however, the Trustee has failed to show in the first instance how or why the amounts in Joseph's personal account were property of the estate. She introduced no evidence of a substantive consolidation of Joseph's estate with M & L or other finding that Joseph must turnover the sums held in his personal account as estate property. Therefore, the bankruptcy court properly concluded that the Trustee's claim for the return of the $50,000 payment under § 549 was not supported by sufficient evidence.

For the foregoing reasons, the bankruptcy court's ruling is AFFIRMED.