## In re The CEILING FAN DISTRIBUTOR, INC., Debtor.

### Bankruptcy No. 83–00655.

United States Bankruptcy Court, M.D. Louisiana.

Dec. 1, 1983.

Thomas Balhoff, Baton Rouge, La., for Harold L. Rowley.

David Bratcher and Margaret Shook, Baton Rouge, La., for Target, Inc.

### FINDINGS OF FACT

WESLEY W. STEEN, Bankruptcy Judge.

(1) The Ceiling Fan Distributor, Inc. (debtor) incorporated on May 7, 1981.

(2) Upon formation, and continuously since then, Lee Rowley owned 50% and Larry Bachuss owned 50% of corporate stock. They were the only directors of the company.

(3) About November 1981, Bachuss and Rowley had a dispute. Rowley left the company; Bachuss continued to operate it.

(4) Rowley withdrew $23,000 from the company checking account and subsequently paid that sum to himself; Bachuss believes that this withdrawal was not properly authorized.

(5) Rowley believes that Bachuss may have improperly appropriated some of the

debtor's funds to himself or to companies he controls; this apparently is believed to have occurred primarily in connection with transactions related to advertising and acquisition of inventory for the debtor.

(6) January 11, 1982, Rowley instigated certain litigation in the 19th Judicial District Court, State of Louisiana, involving recognition of Rowley as 50% owner of the debtor and seeking an involuntary liquidation of the debtor.

(7) Rowley was successful in being recognized as 50% owner; the involuntary liquidation was set for trial.

(8) Just a few days prior to trial of the involuntary liquidation suit, Target, Inc. filed an involuntary bankruptcy proceeding against the debtor.

(9) Target, Inc. is a creditor of the debtor, owed more than $5,000.

(10) The debtor has fewer than twelve creditors.

(11) The debtor is not able to pay its debts as they come due. It has ceased to conduct business and has few, if any, assets. Existing unpaid debts include:

(a) Dr. Vignes—undetermined amount of rent;

(b) State of Louisiana—sales and payroll taxes.

## CONCLUSIONS OF LAW

I. *Requirements for An Involuntary Case*

§ 303 of the Bankruptcy Code requires the following elements:

(1) Proper debtor (which includes a corporation operating a retail mercantile business);

(2) Only one petitioning creditor when there are fewer than twelve creditors;

(3) The petitioning creditor's debt must exceed $5,000.

All of these requirements were met. Therefore, it appears that the debtor must be adjudicated and relief ordered unless the petition is timely controverted (§ 303(h)).

Was the petition timely controverted? § 303(d) allows a petition to be answered by the debtor. There is no authority for a stockholder (or anyone else) to answer the petition.

Rowley's attorney argues forcefully that a stockholder must be allowed to file an answer, else no answer could be filed since Bachuss (as a director) would not agree to the debtor opposing an action instigated by Bachuss's controlled corporation. Counsel cites cases allowing such stockholder action.

But those cases and the treatise material allow a stockholder to prevent an involuntary action that is motivated or involved with a scheme to defraud the stockholder. There has been no such showing here. If Bachuss (or entities controlled by him) has taken money belonging to the debtor (as Rowley apparently believes), it will be the trustee's duty to recover those funds, so Rowley's rights should be protected. If Rowley has taken funds improperly, he cannot be heard to say that an attempt to recover those funds would constitute fraudulent action.

Absent a showing of a plan or scheme to achieve fraud or other proscribed conduct, there appears no authority for a stockholder to oppose an involuntary petition under the Bankruptcy Code. But even if there were, the only effect of the filing of an answer is that the order for relief is not automatic. In the event of an answer to the involuntary petition, " . . . after trial, the court *shall* order relief against the debtor in an involuntary case . . . only if . . . the debtor is generally not paying . . . debts as such debts become due." (§ 303(h), emphasis supplied.)

Thus, assuming that the stockholder may file an answer in opposition to the involuntary petition, the court is still *required* to order relief since the debtor was not able to pay its debts as they became due.

For the reasons given, the Court finds that all requirements of § 303 were met and orders relief under Chapter 7 of the Bankruptcy Code as prayed for in the petition. The Court does so under an interpretation of § 303 that relief is mandatory if the requirements of the statute are met.

The Court will respond, however, to other points raised by counsel for Mr. Rowley.

## II. *Abstention*

■ § 305(a)(1) permits the Court to abstain from a case if the interests of the creditors and the debtor would thereby be better served. The Court declines to exercise that power for these reasons.

First, the Court does not believe that the interests of the debtor and creditors would be better served by abstention. In fact, if either or both of the litigants (Rowley and Bachuss) are correct, the debtor and creditors would be better served by exercise of the bankruptcy court's jurisdiction, substantial equity powers, and statutory powers in the Bankruptcy Code to recover preferences and fraudulent conveyances. If there were any defalcation with respect to this debtor, the "wrong" is more likely to be "righted" on account of the exercise of these extraordinary rights available to the trustee.

Second, the case cited by counsel for Mr. Rowley, *In the Matter of Win-Sum Sports, Inc.,* 5 C.B.C.2d 248, 14 B.R. 389 (B.Ct.D. Conn.,1981), indicates that the abstention doctrine should be exercised sparingly and only in extraordinary circumstances (14 B.R. 389, 393).

The *Win-Sum* court exercised the abstention power, but the circumstances were quite different from the facts in the instant case. In *Win-Sum,* the debtor was operating a business that apparently was quite viable. Ceiling Fan, on the other hand, is already defunct. The *Win-Sum* court avoided the bankruptcy liquidation of a going business. In the instant case, we are concerned, instead, merely with the autopsy of a business that is already quite dead. While the dissection of a living business may not properly be the business of a bankruptcy court, the division of a carcass and the reclamation of pre-petition gouging may well be.

Counsel for Rowley argued that bankruptcy is not an appropriate forum when the debtor has no assets. The Court finds no such provision in the Bankruptcy Code and the Court takes judicial notice of a very large number of "no asset" cases routinely processed by the Court. But if Mr. Rowley's testimony and petition are believed, the debtor has quite a large asset indeed which consists of the debtor's claim against Mr. Bachuss and his controlled companies. If Mr. Bachuss is correct, there is a $23,000 claim against Mr. Rowley.

Counsel for Mr. Rowley asserts that there are so few creditors that, *a fortiori,* the *Win-Sum* abstention doctrine should apply. The Court cannot accept that reasoning. Regardless of how few claims there are, it is apparent that there are even fewer dollars with which to satisfy those claims. Distribution of insufficient assets among creditors and distribution of any surplus to security holders is the normal work of the bankruptcy court.

Finally, counsel for Mr. Rowley suggests that all of Mr. Rowley's expenses in the State court proceedings will be wasted if the bankruptcy court exercises jurisdiction. The Court would hope not and would expect the trustee actively to pursue whatever claims the debtor might have against either or both stockholders. The legal work to date should be quite useful to the trustee, who might even retain Mr. Balhoff as special counsel to assist in those recoveries if no ethical or legal prohibition exists to that employment; if such prohibition were to exist, Mr. Balhoff's work product to date ought certainly to avoid duplication of that work by the trustee.

An order for relief under Chapter 7 of the Bankruptcy Code will be entered.