In re William J. SCHUELLER, Debtor.

**WESTERN CITIES BROADCASTING, INC., Appellant,**

v.

**William J. SCHUELLER, Appellee.**

Civ. A. No. 91–K–2.
Bankruptcy No. 89–B–11544A.

United States District Court,
D. Colorado.

April 22, 1991.

Jeffrey Weinman, Silver, Hayes, Robinson & Derrick, Denver, Colo., for William Schueller.

Garry R. Appel, Denver, Colo., for Western Cities Broadcasting, Inc.

MEMORANDUM OPINION
AND ORDER

KANE, Senior District Judge.

This is an appeal of the bankruptcy court's December 21, 1990 order denying the motion of appellant Western Cities Broadcasting, Inc. for relief from the court's previous order deferring consideration of Western Cities' proposed reorganization plan. Western Cities argues, among other things, that the court exceeded its jurisdiction in ordering deferral of the hearing on its plan. The debtor and the Unsecured Creditors Committee (Committee) respond that the bankruptcy court did not abuse its discretion in upholding its earlier ruling. The Committee also argues that this appeal is improper because it is interlocutory and Western Cities is attempting to circumvent its failure to appeal the court's initial ruling on the motion by appealing the ruling on the motion for relief from judgment.[1] I affirm the bankruptcy court's ruling.

---

**1.** By order dated February 11, 1990, I denied Schueller's motion to dismiss the appeal on this basis.

## I. *Facts.*

The debtor in this bankruptcy proceeding, William J. Schueller, operated a business known as Eldorado Communications. The company owned property on Eldorado Mountain upon which was constructed a large radio broadcasting tower. Three radio stations used Eldorado Communications' broadcasting facilities, including station KQKS operated by Western Cities. In 1987, Schueller and Western Cities entered into a leasing agreement whereby Western Cities paid $3,500 per month for space on the broadcast tower for use by KQKS. Western Cities planned to construct a multiple systems antenna on the tower. However, when Western Cities placed a temporary antenna on the structure, it interfered with the transmission of the other stations.

Because it appeared that the interference problem could not be corrected, Schueller commenced an eviction action in Jefferson County Court against Western Cities. Western Cities in turn commenced an action against Schueller for breach of the lease agreement, claiming fraud in the inducement and misrepresentation. Western prevailed on its fraud claim and was awarded $2.74 million in actual damages and $1 million in punitive damages. Schueller obtained judgment against Western Cities for breach of the lease agreement and was awarded $400,000 in damages and $150,000 in attorney fees. Both parties appealed these at least facially inconsistent judgments to the Colorado Court of Appeals.[2]

On August 24, 1989, Schueller filed his petition for reorganization under Chapter 11 of the Bankruptcy Code. He submitted his amended plan of reorganization on April 16, 1990.

The largest claim against the estate is Western Cities' claim arising out of its state court judgment against Schueller. Schueller's reorganization plan provided that unsecured claims, including that of Western Cities, would be paid semi-annually, on a pro-rata basis, from the net income Schueller earned from the continued operation of his business, until the unsecured claims were paid in full in approximately six years. Western Cities' pro rata share of this income was to be escrowed pending a ruling in the parties' state court appeal. Should the appeal be decided in favor of Schueller, the monies escrowed for payment to Western Cities were to be distributed to the other unsecured creditors. If Western Cities prevailed on appeal, Schueller was to liquidate his non-exempt business assets, and the proceeds would then be distributed pro rata to all unsecured creditors, including Western Cities, with the creditors receiving approximately five percent of the value of their claims.

On May 25, 1990, after the exclusive period for Schueller to obtain acceptance of a plan expired, Western Cities filed a competing plan of reorganization, which was later amended. Western Cities' plan provided that Western Cities would acquire all of Schueller's non-exempt assets, including the Eldorado Mountain property and facilities. Western Cities was then to pay into an escrow account the sum of $654,450, representing the value of these assets. Certain cash held by the estate was also to be deposited. Western Cities was then to pay to the bulk of the creditors the full amount of their claims out of the escrow account. Any remaining funds would be paid to Western in full satisfaction of its claim. The plan further required both Schueller and Western Cities to dismiss their appeals of the state court action.

On July 13, 1990, the Committee moved the court to defer consideration of Western Cities' plan, in which Schueller later joined. It argued that

> [u]ntil the appeal is decided, it will not be determined for certain whether Western Cities is a creditor, having standing to file a reorganization plan. One possible outcome of the appeal is that Western Cities will have their [sic] judgment against the Debtor reversed, and be a debtor to the estate, and thus lack standing to propose a plan.

**2.** The appeal was orally argued on November 20, 1990. As of April 17, 1991, the clerk of the Colorado Court of Appeals indicates that the matter is still pending and a decision has yet to be issued.

R.Doc. 227 at 1. The Committee urged that, as a matter of judicial economy, the court should wait for a ruling in the state court appeal before hearing argument on Western Cities' plan. Western Cities objected to the motion, noting that the Code permits any party in interest, not just a creditor, to propose a plan. It also questioned the Committee's motivation in seeking to defer consideration of a plan more favorable to the unsecured creditors than that proposed by the debtor.

After a hearing on August 13, 1990, the bankruptcy court granted the Committee's motion. The minutes from those proceedings indicate that the court directed Western Cities to move to reset the hearing on its plan once the state court appeal was decided. On August 21, 1990, Western Cities moved for reconsideration of the court's ruling. The Committee responded by arguing that Western Cities raised no new issues and had failed to provide the Committee with information showing its ability to fund the plan, thereby putting into question whether the plan was, in fact, viable. Schueller likewise objected to the motion for reconsideration, contending that the court acted properly in controlling the administration of this case.

On August 24, 1990, the bankruptcy court entered its order denying Western Cities' motion for reconsideration. In that order, the court held that it had the express power under § 105 of the Bankruptcy Code to enter any order necessary or appropriate to carry out the provisions of the Code, and that deferring consideration of Western Cities' plan "was in the best interest of all parties to this proceeding" and "was entered for reasons of judicial efficiency and economy." R.Doc. 248 at 2. The court also ruled that § 305(a) of the Code, which incorporates § 304(c), gave it the authority to suspend the proceedings "to assure an economical and expeditious administration of the estate." *Id.* at 3. Finally, the court concluded

> [n]either party is prejudiced by the court's Order to defer or suspend the

proceedings pending the resolution of the matters in the Colorado State Court of Appeals. The court acknowledges that some delay will occur as a result of its Order; however, the resolution of the issues on appeal takes priority in order to effectively and economically effect a Plan of Reorganization.

*Id.*[3]

Upon obtaining new counsel, Western Cities again moved for reconsideration, asserting as the basis for its motion Fed.R. Civ.P. 60(b) and its bankruptcy analog, Bankr.R. 9024. Western Cities argued that the bankruptcy court's judgments were void as a matter of law because the bankruptcy court had no jurisdiction to enter a final order suspending proceedings under § 305, but could only recommend such action to the district court. Since suspension of the proceedings was impermissible under § 305, Western Cities argued that it was likewise improper under § 105.

In response, the Committee asserted that the court's order was consistent with its powers under § 105 to control the administration of its cases, and that the order was not void under § 305 because the case was not dismissed or suspended, only the hearing on Western Cities' reorganization plan. On December 21, 1990 the court again denied Western Cities' motion without entering an opinion. It is from this order that Western Cities now appeals.

## II. *Merits.*

### A. *Standard of Review.*

■ As outlined in my February 11, 1991 order on Schueller's motion to dismiss, Western Cities' appeal of the denial of its Bankr.Rule 9024 motion for relief from the judgment is not a substitute for a direct appeal. *See Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.,* 909 F.2d 1437, 1440 (10th Cir.1990) (construing parallel appeal of Rule 60(b) motion). It does not bring into issue the merits of the bankruptcy court's original ruling granting the Committee's motion to defer consideration of

---

**3.** Apparently, the bankruptcy clerk did not enter on a separate document a final judgment on this motion.

Western Cities' plan. *Id.* Thus, in an appeal from the denial of a Rule 9024 motion, sitting as an appellate court, I must consider whether the lower court abused its discretion in denying the request for relief. *Bunn v. Frontier Airlines, Inc. (In re Frontier Airlines, Inc.),* 117 B.R. 585, 587 (D.Colo.1990).

### B. *Denial of Rule 9024 Motion.*

Bankruptcy Rule 9024 provides, with limited exceptions not relevant here, that Fed. R.Civ.P. 60 applies in all cases under the Code. Under Rule 60(b), the court may relieve a party from a final order only in exceptional circumstances. *Bud Brooks Trucking,* 909 F.2d at 1440. Western Cities makes three arguments why such exceptional circumstances are present in this case: (1) the court's order was void because it was without jurisdiction to suspend the proceedings under § 305, (2) the court had no jurisdiction to suspend the proceedings under § 105 because the same action was barred by § 305, and (3) the court's ruling was inconsistent with other Code provisions. None of these arguments is persuasive.

The linchpin of Western Cities' appeal is its assertion that the bankruptcy court had no jurisdiction to enter a final order suspending the proceedings under § 305 of the Bankruptcy Code.[4] Voidness of the underlying judgment is a proper basis for Rule 60(b) relief. *See* Fed.R.Civ.P. 60(b)(4).

Until recently, Western Cities' contention that the bankruptcy court may not enter a final order under § 305 was true. Western Cities relies on the 1988 decision in *Colorado Industrial Bank of Loveland v. Colorado State Bank Commissioner (In re Colorado Industrial Bank of Loveland),* 85 B.R. 855 (D.Colo.1988). In *Colorado Industrial,* the court struck down the bankruptcy court's § 305 order dismissing

the debtor's bankruptcy case on the grounds that the petitioning bank was not a "debtor" as defined in the Code. In addition to finding the bankruptcy court's statutory analysis deficient, the district court held that the bankruptcy court lacks the power to enter a final order under § 305. *See id.* at 865.

The reason for the court's conclusion that the bankruptcy court's § 305 order was jurisdictionally infirm was language in the statute then in effect which provided that "[a]n order under subsection [305](a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise." 11 U.S.C. § 305(c) (later amended). The court in *Colorado Industrial* reasoned that, because a § 305 order dismissing or suspending the proceedings is unreviewable by the district court, it contravenes the "careful delineation of functions" between the bankruptcy and district courts adopted in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). 85 B.R. at 857; *see also Chemical Bank v. Togut (In re Axona Int'l Credit & Commerce Ltd.),* 924 F.2d 31, 35 (2d Cir.1991). It adopted the reasoning of other courts in holding that a § 305 motion is a non-core, related proceeding in which a bankruptcy court may only enter proposed findings of fact and conclusions of law or treat the motion as one to withdraw the reference to the district court. *Id.* Western Cities suggests that such a procedure should have been followed in this case.

The jurisdictional problems with § 305 have now been corrected. With the enactment on December 1, 1990 of the Federal Courts Study Committee Implementation Act of 1990, Pub.L. No. 101–650, § 309, 104

---

**4.** That section provides:
   (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
      (1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or

      (2)(A) there is pending a foreign proceeding; and
      (B) the factors specified in section 304(c) of this title warrant such dismissal or suspension.
11 U.S.C. § 305(a).

Stat. 5089, 5104, 5113, Congress amended § 305(c) of the Code to permit an appeal to the district court. As amended, this section now provides:

(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise by the court of appeals under § 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

11 U.S.C. § 305(c). In *In re Axona International Credit & Commerce Ltd.*, the court explained the effect of this new language:

The enactment of this section has thus limited non-reviewablility to the court of appeals and the Supreme Court and, by implication, left intact the possibility of district court review of § 305(a) decisions when made by the bankruptcy court. Such Article III review of bankruptcy court decisions removes any constitutional concerns presented by the predecessor section. Further review by the court of appeals and the Supreme Court is not constitutionally required.

924 F.2d at 35.

■ The amendment was enacted and took effect *before* the hearing on Western Cities' Rule 9024 motion for relief from judgment. This raises a potentially complicated retrospectivity question. Although I have not delved in depth into this issue, I find that the amendment of § 305 was a clarification of that statute. As a clarification, it applies to all matters pending at the time of its enactment. *See* 1A *Sutherland Statutory Construction* § 22.36 at 301 (4th Ed.1985). Accordingly, because the bankruptcy court's judgment under § 305 was not void at the time it was presented with Western Cities' motion for relief from judgment, the bankruptcy court did not abuse its discretion in denying the motion.

■ Assuming, however, that the amendment to § 305(c) does not apply retrospectively, there are alternative reasons to uphold the bankruptcy court's ruling. First, the Committee and Schueller contend

that, although the bankruptcy court cited § 305 to support its ruling, this section really does not apply. There is some merit to this argument. Most courts view § 305 as an abstention provision, even though its language employs the terms "dismissal" and "suspension." *See, e.g., Hartigan v. Pine Lake Village Apt. Co. (In re Pine Lake Village Apt. Co.)*, 16 B.R. 750, 752 (Bankr.S.D.N.Y.1982). Here, the bankruptcy court did not abstain, dismiss or suspend all the proceedings in this case, only consideration of Western Cities' plan. *See Pankau v. First State Bank of Harvard (In re Pankau)*, 65 B.R. 204, 206 n. 3 (Bankr.N.D. Ill.1986) (noting that dismissal or suspension under § 305 refers to the entire bankruptcy case, not just a matter within the case).

The Committee notes that other matters in this bankruptcy case have proceeded since the court's August, 1990 ruling granting the Committee's motion for deferral. Western Cities responds that these were minor matters, primarily involving the court's approval of attorney fee applications. Nevertheless, it appears that the court's ruling was directed only to Western Cities' plan, not to the proceedings as a whole, and its citation of § 305 was only to bolster its argument that it had the inherent power to order deferral under § 105. *But see In re Whitby*, 51 B.R. 184 (Bankr. E.D.Mich.1985) (a pre-amendment case relying on § 305 to suspend bankruptcy proceedings pending dispositive ruling in state court action).

Second, although the bankruptcy court's citation to § 305 may have been improper, it placed equal, if not more, reliance on § 105(a) of the Code. That section states:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). The parties do not cite nor have I found cases addressing whether § 105 is a proper basis for the court's action to defer consideration of a reorganization plan pending the resolution of a potentially dispositive state court appeal. Nevertheless, I think that § 105 is broad enough to permit such a ruling. *See generally, United States v. Energy Resources Co.*, —— U.S. ——, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990) (noting bankruptcy court's broad equitable powers under § 105).

Under other Code sections, the bankruptcy court is clearly authorized to exercise similar powers. For example, under § 362 of the Code, the court has the power to enter relief from the stay in bankruptcy to permit state court proceedings to go forward which will eventually resolve the validity or dischargeability of a creditor's claim against the estate. *See, e.g., In re Yaffe*, 58 B.R. 26, 28 (Bankr.D.D.C.1986). Similarly, the court is empowered under § 105 to enjoin state court proceedings which may have a detrimental effect on the administration of the estate. *See generally, Lopresto v. Department of Revenue (In re Iorizzo)*, 114 B.R. 19, 23 (E.D.N.Y. 1990). If the court may properly exercise its powers in these ways, it follows that it may defer a hearing on a plan until state court proceedings are resolved. *Compare In re Kehn Ranch, Inc.*, 41 B.R. 832 (Bankr.D.S.D.1984) (court has power under § 105 to defer hearing on creditor's disclosure statement); *In re Ware Spaces, Inc.*, 5 B.R. 204 (Bankr.D.Haw.1980) (deferring hearing on motion to dismiss debtor's petition based on § 105 powers). Therefore, since the bankruptcy court's ruling can be upheld under § 105, it did not abuse its discretion in denying Western Cities' motion.

Western Cities' remaining contentions merit little discussion. The company asserts that the bankruptcy court's reliance on § 105 of the Bankruptcy Code, as an alternative basis for granting the Committee's motion for deferral, was improper. The essence of its argument is that the bankruptcy court may not accomplish under § 105 what it has no jurisdiction to do

under § 305. However, since the bankruptcy court's order under that section was not void, and since § 305 has questionable applicability to this case, this argument fails.

Western Cities likewise claims that the bankruptcy court's ruling contravenes several other provisions of the Bankruptcy Code, namely § 1121, relating to who may file a plan, and § 1107, relating to a debtor-in-possession's powers and duties. These arguments go to the merits of the bankruptcy court's underlying order, and not to whether the court abused its discretion in denying the motion for relief from judgment. They are improper in an appeal of this nature.

Finally, Western Cities argues that it was deprived of due process by the deferral of the hearing on its plan. It strains logic to suggest that the deferral of an immediate hearing on a plan equates to the denial of due process when Western Cities remains in the same position as are the other creditors.

### III. *Conclusion.*

Western Cities' arguments in this appeal by and large depend on the accuracy of its assertion that the bankruptcy court has no jurisdiction to enter a final order under § 305. However, while its motion for relief from judgment on this basis was pending, Congress amended § 305 to permit a direct appeal from an order under this Code section, thereby eliminating its jurisdictional problems with this section. Assuming the bankruptcy court could consider the validity of its order under the newly amended statute, it did not abuse its discretion in denying Western Cities' motion for relief from the judgment.

If the court's order was nevertheless invalid under § 305 because the amendment did not apply, there are alternative reasons for sustaining its judgment. Section § 105 of the Code gives the bankruptcy court broad powers to regulate the administration of the cases before it. The court's decision to defer consideration of Western Cities' reorganization plan was a valid exercise of that power. Whether Western Cities holds a valid claim against Schueller's estate based on the state court pro-

**360**

ceedings is central to the consideration of any reorganization plan. It was not improper for the court to regulate its proceedings by suspending consideration of the competing reorganization plans until the Colorado Court of Appeals has ruled on the appeal.

The bankruptcy court did not abuse its discretion in denying Western Cities' motion for relief from judgment. The order is AFFIRMED.