## In re DURATECH INDUSTRIES, INC., Debtor.

### No. 99–CV–2288.

United States District Court,
E.D. New York.

Nov. 2, 1999.

Bruce J. Zabarauskas, Meltzer, Lippe, Goldstein & Schissel, P.C., Mineola, New York, for Nu–Chem Laboratories, Inc.

Howard J. Wunderlich, East Islip, New York, for Duratech Industries, Inc.

## AMENDED ORDER[1]

JOANNA SEYBERT, District Judge.

Pending before this Court is the unopposed appeal of appellant Nu–Chem Laboratories, Inc. ("Nu–Chem"), from an order of the bankruptcy court (the "Original Order"), dated March 11, 1999, in which the bankruptcy court (1) *sua sponte* abstained from administering Duratech Laboratories' ("Duratech") Chapter 11 case pending resolution of the civil litigation between the parties before this Court; (2) denied Nu–Chem's Rule 2004 motion, and (3) prohibited the filing of a plan of reorganiza-

---

1. This Order has been amended to correct minor typographical errors. There has been no change to any substantive matters addressed by the Court.

tion or a disclosure statement by any party.

## BACKGROUND

In order to better understand the nature of the relationship between Duratech and Nu–Chem,' the following discussion briefly summarizes the lengthy, and somewhat tedious, history relating to the parties' civil litigation and the instant bankruptcy appeal.

In September 1996, two former employees of Nu–Chem, Steven Zwerman and David Beauchamp, formed Dynamic Laboratories, Inc. On December 4, 1996 Nu–Chem commenced an action (the "Nu–Chem Action") by an order to show cause seeking a TRO against Dynamic alleging, *inter alia*, theft and misappropriation of trade secrets. This Court granted the TRO and on December 5, 1996, referred Nu–Chem's motion for a preliminary injunction to Magistrate Judge E. Thomas Boyle for a report and recommendation. Dynamic opposed Nu–Chem's motion for a preliminary injunction alleging that the materials, formulas, equipment and customer lists that Dynamic allegedly stole from Nu–Chem, were originally stolen by Nu–Chem from Duratech and its president, Stephen C. Mastrorocco ("Mastrorocco"). On April 11, 1997, this Court adopted the Report and Recommendation of Magistrate Judge Boyle recommending that a preliminary injunction be granted.

Thereafter, proposed intervenors Duratech and Mastrorocco petitioned this Court via an *ex parte* order to show cause to (1) intervene as plaintiffs, (2) grant a TRO and preliminary injunction against Nu–Chem; (3) seize and attach property of Nu–Chem; (4) appoint a receiver for the seized assets; and (5) grant an order for expedited discovery. By orders of this Court, dated November 4, 1997, Duratech's *ex parte* application for a TRO, an order of attachment and an appointment of a receiver was denied. Duratech was permitted to apply for a preliminary injunction and for leave to intervene, upon notice

to the parties, before Magistrate Judge Boyle. On May 19, 1998, this Court adopted the Report and Recommendation of Magistrate Judge Boyle dated December 12, 1997, and granted Duratech Industries, Inc. and Stephen C. Mastrorocco ("Intervenor Plaintiffs") (1) leave to intervene and (2) a preliminary injunction against Nu–Chem.

Intervenor Plaintiffs filed and served an Intervention Complaint on May 29, 1998 naming Nu–Chem, Dynamic and others as Intervention Defendants alleging several causes of action, including, multiple violations of RICO, violation of the Lanham Act, 15 U.S.C. § 1125(a), and a number of state law claims. Nu–Chem and Dynamic have since entered into a settlement agreement and the Nu–Chem Action was dismissed with prejudice by this Court on December 21, 1998 leaving Duratech's Intervenor Complaint as the only claims remaining in the civil litigation.

Concurrent with the civil proceedings, Duratech Industries, Inc. filed a Chapter 11 petition with the United States Bankruptcy Court E.D.N.Y. on December 17, 1997. On February 13, 1998 Nu–Chem and its principal officers, Daryl Squicciarini and Joseph Ialacci, filed proofs of identical unliquidated and contingent claims of $3,000,000 each in the Duratech estate for alleged trade libel and related business torts. Duratech filed objections to these claims and moved to have the reference withdrawn to this Court on the ground that the determination of these claims were, in essence, counterclaims to the action pending before this Court. Thereafter, on March 31, 1999, this Court adopted the Report and Recommendation of Magistrate Judge Boyle, dated March 1, 1999, recommending that the proofs of claim filed by Nu–Chem be withdrawn and consolidated with the pending civil action.

On May 7, 1998, the Bankruptcy Court denied a motion filed by Duratech to extend the exclusive period provided for in section 1121 of the Bankruptcy Code with-

in which only the debtor could file a plan or reorganization. The effect of such ruling entitled any party in interest to file a plan of reorganization in the debtor's Chapter 11 case.[2] Subsequently, pursuant to an Assignment and Acknowledgment agreement dated February 10, 1999, Nu–Chem acquired a $1,118.17 claim held by PVC Container Corp. against Duratech for $500.00. As such, Nu–Chem now qualified as a "party in interest" pursuant to which Nu–Chem could seek to file a plan of reorganization and invoke the discovery provisions under Rule 2004 of the Federal Rules of Bankruptcy Procedure.[3] Thereafter, on February 11, 1999, Nu–Chem made an application for an order, pursuant to Rule 2004, authorizing Nu–Chem to take an examination of Duratech and compel Duratech to produce documents concerning Duratech's assets and business operations. The alleged basis for the Rule 2004 motion was that Duratech was prepared to exercise its right under section 1121 of the Bankruptcy Code to file a plan of reorganization.

On March 11, 1999, the bankruptcy court (1) *sua sponte* abstained from administering Duratech's Chapter 11 case pending resolution of the civil litigation before this Court; (2) denied Nu–Chem's Rule 2004 motion, and (3) stated that there will be "no disclosure statement . . . or plan filed by the debtor or any other parties." Nu–Chem filed a notice of appeal from the bankruptcy order on March 19, 1999. Subsequently, on April 1, 1999, the bankruptcy court issued its opinion, and on April 8, 1999, the bankruptcy court issued an Amended Memorandum and Opinion (the "Amended Opinion"). In the Amended Opinion the bankruptcy court modified the Original Order by stating that the order did not preclude any party from filing a plan of reorganization and disclosure statement.

The following issues are raised on appeal (1) whether the bankruptcy court erred by *sua sponte* abstaining from administering the debtor's Chapter 11 proceeding; (2) whether the bankruptcy court erred by denying Nu–Chem's Rule 2004 motion; and (3) whether the bankruptcy court erred by prohibiting any party to proceed with a hearing on approval of a plan of reorganization.

## I. STANDARD OF REVIEW GOVERNING BANKRUPTCY APPEALS

■ Rule 8013 of the Federal Rules of Bankruptcy Procedure establishes the standard governing a district court's review of a bankruptcy judge's order. This rule provides:

On an appeal the district or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

Fed.R.Bankr.P. 8013. According to this standard, while a bankruptcy judge's factual findings may not be set aside unless clearly erroneous, a bankruptcy judge's legal conclusions are reviewed *de novo*. See *In re Dill*, 163 B.R. 221, 224 (E.D.N.Y. 1994). Mixed questions of law and fact are to be reviewed *de novo* as well. *In re PCH Associates*, 949 F.2d 585, 597 (2d Cir.1991).

### A. Abstention Pursuant to Section 305

■ Section 305 of the Bankruptcy Code provides, in relevant part, that "[t]he court, after notice and a hearing, may dis-

---

2. "Any party in interest . . . may file a plan if . . . the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter . . ." 11 U.S.C. § 1121.

3. Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." FED.R.BANKR.P. 2004(a).

miss a case ... or may suspend all proceedings in a case under this title, at any time ... if (1) the interests of creditors and the debtor would be better served by such ... suspension." 11 U.S.C. § 305(a)(1). Section 305 grants bankruptcy courts significant discretion, in certain circumstances, to either dismiss or suspend proceedings under Title 11. *See* 2 Collier on Bankruptcy ¶ 305.01 (15th ed.1996). Although section 305 is applicable only in narrow circumstances,[4] section 105 of the Bankruptcy Code authorizes the court to *sua sponte* abstain from administering proceedings under Title 11. Specifically, section 105(a) states that "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to ... prevent an abuse of process." 11 U.S.C. § 105(a). *See In re Coram Graphic Arts,* 11 B.R. 641, 645 (Bankr.E.D.N.Y. 1981) (holding that court has inherent power to *sua sponte* dismiss debtor's Chapter 11 proceeding pursuant to §§ 105, 305 and 1112(b) of the Bankruptcy Code).

■ Judge Bernstein decided to abstain from administering Duratech's Chapter 11 case, in large part, due to the fact that Duratech and Nu–Chem were currently involved in a lengthy civil litigation the outcome of which could substantially bear upon Duratech's ability to confirm a plan of reorganization. In particular, Judge Bernstein determined that the success or failure of Duratech's chapter 11 case depended upon the outcome of the civil litigation and therefore concluded that it was in the interest of both creditors and debtor for the bankruptcy court to suspend proceedings under Chapter 11. Judge Bernstein concluded that if Duratech succeeds in the pending litigation, it will be able to make a significant distribution to its unsecured creditors.

On appeal, Nu–Chem cites *In re Ceiling Fan Distributor, Inc.,* 37 B.R. 701 (Bankr. M.D.La.1983) and *In re Southwest Oil Company of Jourdanton, Inc.,* 84 B.R. 448 (Bankr.W.D.Texas 1987) in support of its contention that pending litigation is not sufficient grounds for abstention. In *In re Ceiling,* the court stated that a state court involuntary liquidation action instituted by a shareholder did not provide a basis for abstention by the bankruptcy court. *In re Ceiling,* 37 B.R. at 703. The court found that the legal work done at the state level could be useful to the trustee. *Id.* This is distinguishable from the instant appeal where the pending litigation concerns debtor's allegations against creditor for, amongst other things, unfair competition, theft and misappropriation of trade secrets. In fact, the creditor's original claims against the bankruptcy estate were withdrawn to this Court as more properly decided as counterclaims to the pending civil litigation.

Furthermore, although the Court in *In re Southwest* refused to extend the exclusivity period where debtor and creditors were involved in pending civil litigation, the Court noted that the pending case involved "predictable creditor litigation, symptomatic of any business difficulty in its advances stages". *In re Southwest,* 84 B.R. at 453. Here, the pending civil case is anything but the type of "predictable" debtor and creditor litigation referred to by the court in *In re Southwest.* The pending civil action was initiated by Nu–Chem against a third party to which Duratech later intervened as an intervenor plaintiff. As noted above, Duratech is suing Nu–Chem for unfair competition, theft and misappropriation of trade secrets. Moreover, Nu–Chem's current rights as a creditor did not even arise until Nu–Chem acquired a $1,118 claim against Duratech for the bargain rate of $500.

---

4. Section 305(a) limits the instances in which a court may dismiss or suspend proceedings under Title 11 to (i) where it is in the interest of the creditors and the debtor or (ii) where a foreign proceeding is pending. *See* 28 U.S.C. § 305(a).

Finally, even if the bankruptcy court did err by concluding that abstention pursuant to section 305 was the appropriate remedy, this Court finds that the bankruptcy court had the authority to make such a determination pursuant to section 105 of the Code.[5] As cited above, section 105(a) states that "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to . . . prevent an abuse of process." 11 U.S.C. § 105. Section 105 provides the basis for the broad exercise of power in the administration of a bankruptcy case. *See generally United States v. Energy Resources Co.*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990) (noting bankruptcy court's broad equitable powers under § 105). Section 105, however, does not permit the bankruptcy courts to contravene the express provisions of the Bankruptcy Code. 2 Collier on Bankruptcy ¶ 105.01[2] (15th ed.1996) (citations omitted).

Although the Second Circuit has not explicitly addressed an application of section 105 in this context, the Second Circuit has "repeatedly emphasized the bankruptcy court's equitable power." *In re Momentum Manuf. Corp. v. Employee Creditors Committee*, 25 F.3d 1132, 1136 (2d Cir. 1994). Specifically, the Second Circuit has stressed that a bankruptcy court "may sift the circumstances surrounding any claim in order to ascertain that injustice or unfairness is not accomplished in the administration of the debtor's estate, and in so doing it may adopt that remedy which it deems most appropriate under the circumstances." *Id.* (quoting *In re Stirling Homex Corp.*, 591 F.2d 148, 155–56 (2d Cir. 1978)).

In addition, the Court notes that other courts have applied section 105 in this context. *See In re Schueller*, 126 B.R. 354, 359 (D.Colo.1991). For example, in *In re Schueller* the court addressed the issue of whether abstention pursuant to sections 105 and 305 of the Bankruptcy Code was appropriate in light of potentially dispositive state court litigation. Although questioning the applicability of section 305, the court concluded that section 105 was broad enough to permit the court "to defer consideration of a reorganization plan pending the resolution of a potentially dispositive state court appeal." *Id.*

In support of this contention, the court first noted that section 362 of the Code permits the court to enter relief from the stay in bankruptcy to allow "state court proceedings to go forward which will eventually resolve the validity or dischargeability of a creditor's claim against the estate." *Id.* (citing *In re Yaffe*, 58 B.R. 26, 28 (Bankr.D.D.C.1986). The court then noted that section 105 empowers the court to "enjoin state court proceedings which may have a detrimental effect on the administration of the estate." *In re Schueller*, 126 B.R. at 359 (citing *In re Iorizzo*, 114 B.R. 19, 23 (E.D.N.Y.1990)). As a result, the court reasoned that it logically follows that a court, in exercising its powers, "may defer a hearing on a plan until state court proceedings are resolved." *In re Schueller*, 126 B.R. at 359. Thus, the district court concluded that the bankruptcy court's ruling, abstaining from considering a proposed plan of reorganization in light of pending state court litigation, was proper pursuant to section 105.

In the instant action, the bankruptcy court determined that the likely success of Duratech in the pending civil litigation would enable Duratech to make a significant distribution to its unsecured creditors.

---

5. The bankruptcy court relied, in part, on section 105 of the Code in deciding to abstain from administering the debtor's Chapter 11 case. Specifically, the bankruptcy court, determined that it should abstain from (or suspend) any further administration of the debt-or's Chapter 11 case pursuant to sections 102, 105 and 305 of the Bankruptcy Code pending resolution of the substantive matters pending before this Court. *In re Duratech*, 241 B.R. 291, 292–93 (Bankr.E.D.N.Y.1999).

Consequently, the bankruptcy court determined that abstention from the proceedings was appropriate. Therefore, since this conclusion can be upheld pursuant to section 105 of the Code, this Court concludes that the bankruptcy court did not err by abstaining from administering the debtor's Chapter 11 case.

Moreover, it has not escaped this Court's attention that the original claims filed by Nu–Chem, for trade libel and related business torts, against the debtor's estate were withdrawn to this Court for final resolution. Thereafter, Nu–Chem acquired by assignment a $1,187 claim against the estate for $500 thereby qualifying as a "party in interest" who could seek to propose a plan of reorganization and make an application for discovery under Rule 2004. The Court finds that Nu–Chem is merely attempting to continue its tactical warfare at the expense of the bankruptcy court. As noted by the bankruptcy court, Nu–Chem's actions merely signify "the resumption of fighting the litigation wars on two fronts at the same time to destroy or take over Duratech." *In re Duratech*, 241 B.R. at 299. Consequently, this Court concludes that it was not error for the Bankruptcy Court to abstain from administering the debtor's Chapter 11 case pending resolution of the civil litigation between Duratech and Nu–Chem.

*B. Denial of Nu–Chem's Rule 2004 Motion*

▆▆▆▆ Bankruptcy Rule 2004 states, "[o]n motion of any party in interest, the court may order the examination of any entity." The scope of a Rule 2004 examination is exceptionally broad and the rule itself is "peculiar to bankruptcy law and procedure because it affords few of the procedural safeguards that an examination under Rule 26 of the Federal Rules of Civil Procedure does." *In re GHR Energy Corp.*, 33 B.R. 451, 454 (Bankr.D.Mass. 1983). Examinations under Rule 2004 are allowed for the "purpose of discovering assets and unearthing frauds" and have been compared to a "fishing expedition." *Id.* at 453. There are, however, limits to the scope of Rule 2004 examinations. Significantly, Rule 2004 examinations may not be used for the purposes of abuse or harassment. *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr.E.D.Wis.1984)); 9 Collier on Bankruptcy ¶ 2004.01[1] (15th ed.1996).

▆▆▆ The bankruptcy court denied Nu–Chem's application for an order pursuant to Rule 2004. The bankruptcy court found, and this Court agrees, that Nu–Chem's application did not pass the "smell test." First, as noted by the bankruptcy court, Nu–Chem has already admitted before this Court to stealing business records, customer lists and some of Duratech's business equipment which is the basis of pending civil litigation between the parties. Second, Nu–Chem's application for an order pursuant to Rule 2004 and express intent to file a plan of reorganization did not arise until after this Court (a) granted Duratech a preliminary injunction against Nu–Chem and (b) Magistrate Judge Boyle was on the verge of issuing his Report and Recommendation concerning the withdrawal of Duratech's objections to Nu–Chem's claims. Third, the bankruptcy court noted that Nu–Chem waited twelve months before filing its Rule 2004 order. If, as Judge Bernstein stated, Nu–Chem were interested in filing a bona fide plan, one could reasonably conclude that Nu–Chem would have filed a plan and a disclosure statement within a few weeks of the bankruptcy court's denial of Duratech's motion to extend the exclusivity period.

Furthermore, and on independent grounds, the bankruptcy court determined that even if Nu–Chem was sincere in its attempt to propose a plan of reorganization, there was already sufficient information publicly available to drafting a plan of reorganization. In particular, the bankruptcy court noted that the "statutory standard for approval of a disclosure statement is that the disclosure statement must

provide 'adequate information' so that the creditors can decide whether or not to approve ... the plan." *In re Duratech,* 241 B.R. at 298. The bankruptcy court found that Duratech's creditors had already filed their claims such that their identity, amount, and claim of priority could be generated by reviewing the files in the Clerk's office. *Id.* at 298–99. Additionally, the bankruptcy court found that Duratech had filed its statements of assets and liabilities such that its assets were described in the requisite detail needed to prepare a disclosure statement. *Id.* The bankruptcy court also found that any reasonably experienced creditor's counsel in consultation with an expert in the sale of used industrial equipment could generate an estimate of value of those assets sufficient for purposes of the disclosure statement. *Id.* Finally, the bankruptcy court determined that, depending on the nature of the distribution to unsecured creditors, the operating statements filed in the case provided a reasonably sufficient basis for making the necessary cash flow projections to support a plan. *Id.*

This Court concludes that the bankruptcy court did not commit error in denying Nu–Chem's application for a Rule 2004 examination of Duratech. *See In re Martin,* 208 B.R. 807, 810–11 (N.D.N.Y.1997) (denial of Rule 2004 motion for impermissible purpose of abuse and harassment), *aff'd,* 1998 WL 405966, at *3 (2d Cir.1998) (unpublished disposition). The evidence supports a finding that Nu–Chem was merely attempting to harass and abuse Duratech under the pretext that it was committed to proposing a plan of reorganization for the benefit of creditors. As noted by the bankruptcy court, the only other noninsider holding a large unsecured claim was Duratech's landlord who had not filed any motion to lift the automatic stay or to compel the debtor to assume or reject its lease. Furthermore, as discussed above, the bankruptcy court had sufficient reason to find that enough information was publicly available to propose a plan of reorganization.

## C. Prohibition on Filing a Plan of Reorganization

At the conclusion of the March 11, 1999 hearing before the bankruptcy court, Judge Bernstein stated that there will be "no disclosure statement ... or plan filed by the debtor or any other parties." Nu–Chem argues that the bankruptcy court committed error by "prohibit[ing] ... any party to proceed with a hearing on approval of a disclosure statement or confirmation of a plan of reorganization." Appellant's Brief p. 19. Additionally, Nu–Chem contends that the bankruptcy court was without jurisdiction to modify this order once Nu–Chem had filed its notice of appeal on March 19, 1999. The Amended Opinion, issued on April 8, 1999 states, "[t]o avoid any misunderstanding of the impact of this ruling ... [t]his does not preclude any creditor or other party in interest from filing a plan and disclosure statement, but in order for any hearing to be held on these matters, the plan proponent must move for a modification of this order ..." *In re Duratech,* 241 B.R. at 300.

The Court agrees that once Nu–Chem filed its notice of appeal, the bankruptcy court was without jurisdiction to modify any issues under appeal. *See Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) ("filing of a notice of appeal is an event of jurisdictional significance ... it divests the district court of its control over those aspects of the case involved in the appeal"); *In re Southold Dev. Corp.,* 129 B.R. 18, 21 (E.D.N.Y.1991) ("bankruptcy court ... was divested of jurisdiction regarding issues on appeal ... upon the filing of the notice of appeal."). However, since the Court has already determined that it was not error for the bankruptcy court to abstain from administering Duratech's Chapter 11 case, we need not determine at this time whether the bankruptcy court erred by preventing

the debtor or any other party from filing a disclosure statement or plan of reorganization.

Accordingly, for the aforementioned reasons, the bankruptcy court's Original Order is affirmed.

SO ORDERED.