### In re NORTHWEST ASSOCIATES, INC., Debtor.

### Bankruptcy No. 898–90917–478.

United States Bankruptcy Court,
E.D. New York.

Dec. 27, 1999.

Robert L. Pryor, Westbury, NY, Chapter 7 Trustee.

Law Offices of Ronald J. Rosenberg, by Ronald J. Rosenberg, Garden City, New York, for Frank J. Stubbolo and Kenneth L. Stubbolo.

Mr. Anthony Mariani, Medford, NY, pro se.

LaMonica, Herbst & Manicalco, Wantagh, New York, Substitute Counsel for Chapter 7 Trustee.

Law Offices of Dominic A. Barbara, by Dominic A. Barbara, Garden City, New York, for Frank J. Stubbolo and Kenneth L. Stubbolo.

## MEMORANDUM DECISION DESIGNATING FRANK J. STUBBOLO AND KENNETH L. STUBBOLO AS PRINCIPALS OF THE DEBTOR PURSUANT TO BANKRUPTCY RULE 9001(5)

DOROTHY EISENBERG, Bankruptcy Judge.

Robert L. Pryor, the Chapter 7 Trustee, brought a motion seeking to designate Anthony V. Mariani and Frank and Kenneth Stubbolo as principals of Northwest Associates, Inc. (the "Debtor") for the purposes of (i) complying with the Debtor's duties under the Bankruptcy Code and (ii) producing all books and records of the Debtor in their actual possession, custody or control. Frank and Kenneth Stubbolo objected to the relief requested, and after holding a hearing, the Court concludes that the Trustee's motion should be granted and Frank and Kenneth Stubbolo are to be designated as principals of the Debtor, as they were in control of the Debtor at the time the petition was filed. The following constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### FACTS

On November 2, 1998, an involuntary petition was filed by certain creditors of the Debtor pursuant to Chapter 7 of the United States Bankruptcy Code. On January 6, 1999, Robert L. Pryor was appointed the Interim Trustee of the estate. On March 1, 1999, the Trustee brought an

application seeking to designate Anthony V. Mariani ("Mariani"), Frank J. Stubbolo and Kenneth L. Stubbolo (the "Stubbolos") as principals of the Debtor for the purpose of complying with the Debtor's duties under the Bankruptcy Code, as well as directing Mariani and the Stubbolos to turn over all books and records of the Debtor in their possession, custody or control, and for other relief (the "Application"). The Court held several hearings on the Application: on May 12, June 24, and August 6, 1999. Although counsel for the Stubbolos appeared and cross-examined witnesses called by for the Trustee, the Stubbolos never appeared or testified. No witnesses or evidence was produced by the Stubbolos on their behalf, nor was any evidence produced to refute the direct testimony of former employees of the Debtor.

Mariani was the first to testify. According to Mariani, prior to the filing of this petition, the Stubbolos were the principals of Northwest Construction Corp., located at 120 Finn Court, Farmingdale, New York. After failing to pay certain taxes to the state and federal authorities, Northwest Construction Corp. was shut down by the Internal Revenue Service and filed a petition in bankruptcy. The Debtor was formed shortly thereafter, in the Spring of 1991, at the same location of Northwest Construction Corp.

Mariani further testified that he had been a friend of the Stubbolos for about twenty years. Frank Stubbolo approached him when the Debtor was being formed to ask him if he would be willing to act as the Debtor's President. Frank Stubbolo represented that Mariani would not be personally liable for any tax obligations or other bills, and that there would be no "strings attached." The Debtor would be engaged in the installation of drywalls and the Stubbolos represented that they would handle all of the general contractors. Mariani was advised that he would be retained as a consultant/office manager and his chief obligation for the Debtor would be to sign checks on behalf of the Debtor

because Frank Stubbolo stated that he had "other payroll tax problems" as a result of his involvement with Northwest Construction Corp. (Hearing Transcript, 5/12/99 at p. 13). The Stubbolos had a signature stamp with Mr. Mariani's signature imprinted on it, which the Stubbolos used in the event checks needed to be signed and Mariani was unavailable.

Mariani claimed he had no authority to make any business decisions for the Debtor, and his position as President was merely that of a figurehead. The Stubbolos made all of the decisions regarding the Debtor, including the hiring of employees, what jobs were performed, what bills were paid, where the money was to be disbursed and all of the other day-to-day operations. Any checks signed by Mariani were solely at the direction of the Stubbolos. According to Mariani, the Stubbolos frequently used the Debtor's funds to pay their own personal expenses. In support of this testimony, the Trustee produced copies of various checks issued from the Debtor which were made out to Frank Stubbolo's credit card company, totaling more than $34,000. (Trustee's Exhibit E). In addition, checks from the Debtor made out to the Stubbolos and Gail Stubbolo (Frank Stubbolo's wife) were provided by the Trustee. (Trustee's Exhibit G). Mariani also testified that the Stubbolos had control over the Debtor's books and records, and there came a time where file cabinets containing the Debtor's books and records were removed at the request of the Stubbolos by the employees to an undisclosed location.

Mariani's testimony was further supported by Victoria Kirschberg, the former bookkeeper of the Debtor. Ms. Kirschberg testified that she was hired by the Stubbolos in 1988 or 1989, as a receptionist for Northwest Construction Corp. According to Kirschberg, the Stubbolos were President and Vice President of Northwest Construction Corp., and they supervised her daily activities. She was promoted to secretary and then to bookkeeper over the

years, and her responsibilities included writing checks for Northwest Construction Corp. at the direction of the Stubbolos. Kirschberg recalls that in the early 1990's, the IRS shut Northwest Construction Corp. down and the Stubbolos advised Kirschberg that they would call her when she could come back to work. Within several days, she received a telephone call from the Stubbolos to return to work because the business was going to reopen. She returned to work at the same location and resumed her position as bookkeeper, but the name of the company had been changed to Northwest Associates. The Stubbolos continued to supervise her activities, and they continued to have sole control over which checks were issued to creditors. Frank Stubbolo would receive a list of current bills from Ms. Kirschberg, and Frank Stubbolo would highlight which bills were to be paid. Thereafter, Ms. Kirschberg cut the checks and either used Mr. Mariani's signature stamp or obtained Mr. Mariani's original signature on the checks.

Roger Frenette, a former foreman for the Debtor on its construction jobs, testified that in 1991, he became aware that Northwest Construction Corp. had changed its name to Northwest Associates when his paycheck suddenly reflected the new name in the midst of completing a project in Roslyn, New York. During this time period, Ken Stubbolo continued to supervise the job and hired him for a new job at the Nassau County Correction Center on behalf of the Debtor.

Frenette also testified that the Stubbolos continued to change the name of the corporation as necessary, and even convinced Mr. Frenette to sign checks on behalf of a new corporation named Classic Carpentry, in 1994. Classic Carpentry ostensibly was formed to take advantage of Mr. Frenette's relationship with certain unions and form a "completely legitimate" business. Mr. Frenette was promised by the Stubbolos that he would not become personally liable for any taxes, and he would not be subject to any other exposure or liability. However, Mr. Frenette testified that he subsequently received a large tax bill from the Internal Revenue Service on behalf of Classic Carpentry.

At the close of testimony, the Court found that Mr. Mariani was a principal of the Debtor, and reserved on the issue of whether the Stubbolos were also to be designated as principals of the Debtor.

### DISCUSSION

■ Bankruptcy Rule 9001(5)(A) provides, in pertinent part, as follows:

(5) "Debtor." When any act is required by these rules to be performed by a debtor or when it is necessary to compel attendance of a debtor for examination and the debtor is not a natural person: (A) if the debtor is a corporation, "debtor" includes, if designated by the court, any or all of its officers, members of its board of directors or trustees or of a similar controlling body, a controlling stockholder or member, *or any other person in control;* (Emphasis added).

This rule contemplates that any party "in control" of the Debtor in question can be designated to testify on behalf of a corporate Debtor. Normally, the person in control of a corporation where there is only one shareholder is the sole shareholder, especially in the case of small corporations. However, this case presents unique facts which cause this court to look beyond the sole shareholder, Mr. Mariani, to determine whether the Stubbolos are to be included as persons in control of the Debtor. Although applicable case law on this issue is sparse, it is clear that a court can look beyond an individual's formal title with the Debtor corporation (or lack of formal title) to make a determination if a party is in control of a corporation based on the party's duties and responsibilities vis-a-vis the Debtor.

In *In re Ron San Realty Co., Inc.*, 457 F.Supp. 994 (S.D.N.Y.1978), the District Court for the Southern District of New York upheld a Bankruptcy Court's decision

to designate Henry Suval as a "person in control" of the Debtor corporation, a beauty salon, for the purposes of testifying and performing the duties of the Debtor. Suval had no formal employment relationship with the Debtor, and was neither an officer nor a director of the Debtor. The Bankruptcy Court had made its determination after hearing testimony from the chairman of the board of directors of the Debtor, as well as several of the Debtor's employees that Suval was responsible for the hiring and firing of personnel, the opening and closing of salon locations, the negotiation of leases, signing of contracts, the preparation of financial statements and the signing of checks. The witnesses corroborated each other's testimony, and supported a finding by the Bankruptcy Court that based on Suval's control over the Debtor, Suval was to be designated as a person-in-control of the Debtor. *Id.* at 996.

The District Court upheld the Bankruptcy Court's determination and firmly rejected Suval's argument on appeal that the absence of any formal employment relationship between the Debtor and Suval deserved considerable weight. *Id.* The District Court relied on an analogous case, *Greene v. Harris,* 240 F.2d 275 (2d Cir. 1957), where the court affirmed the designation of a person-in-control of the Debtor, even though Harris had resigned shortly before the bankruptcy petition was filed and had no employment relationship with the Debtor at the time the petition was filed. The District Court found *Greene v. Harris* to be instructive on the relative weight to be given to a person's formal relationship with the Debtor at the time of the filing for the purposes of designating a person as in control of the Debtor.

■ The facts of this case are sufficiently similar to *In re Ron San Beauty Co., Inc.* to draw upon in this case. The Stubbolos had no legal relationship with the Debtor by virtue of their titles or stock ownership, but the Court finds that they clearly made all of the decisions on behalf of the Debtor. The testimony of Mariani was corroborated by Ms. Kirschberg and Mr. Frenette, and counsel to the Stubbolos failed to discredit their testimony to any extent. Based on the testimony of all three witnesses, the Court finds that the Stubbolos had complete control over the Debtor. The Stubbolos formed the Debtor, hired and fired employees, supervised jobs, approved the payment of all bills and had control over the books and records of the Debtor. Mr. Mariani's position as President and sole shareholder appears to have been more for appearance's sake than for any substantive purpose, but he has been included in the designation of principal of the Debtor. The Stubbolos went to great lengths to avoid legal responsibility for the management and control of the Debtor to preclude personally incurring tax or other liabilities, while in fact controlling the Debtor. The Stubbolos may have repeated this pattern with other corporations, including Classic Carpentry. In addition to running the Debtor, the Stubbolos treated the Debtor's funds as their own, for payment of personal expenses. This conduct provides further indicia that the Stubbolos were in control of the Debtor, as the Stubbolos appear to have used the Debtor's bank account as if it was their own personal account. Although they appeared in this matter through counsel, no evidence was presented to rebut the testimony of the witnesses or the physical evidence provided by the Trustee.

■ Counsel for the Stubbolos urges the Court to give great weight to the fact that Mariani signed all of the checks and the tax returns, and held himself out to be the sole shareholder of the Debtor, while the Stubbolos were merely consultants. However, the Court will not rely on these criteria and looks to the reality of the Debtor's operations. The Stubbolos had a signature stamp of Mariani's signature and controlled the issuance of all of the checks of the Debtor. The Stubbolos' lack of a formal relationship with or "legal" control over the Debtor does not preclude this Court from finding that the Stubbolos had

188

actual control over all aspects of the Debtor, and that naming them as persons in control of the Debtor is appropriate. Counsel to the Stubbolos offered no evidence to dissuade the Court from making such findings, and the Stubbolos did not testify on any of these issues.

## CONCLUSION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a). This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A).

2. As of the petition date, Kenneth and Frank Stubbolo were persons "in control" of the Debtor as defined in Bankruptcy Rule 9001(5). The Stubbolos ran the Debtor and were responsible for all decisions made regarding the hiring of employees, the jobs to be performed by the Debtor and the payment of bills. In addition, the Stubbolos used the Debtor's bank account to pay their own personal expenses.

3. The Stubbolos failed to refute the Trustee's evidence with any concrete evidence of their own.

4. Based on the foregoing, the Court grants the Trustee's motion in its entirety and directs Mariani and/or the Stubbolos to turn over all of the Debtor's books and records in their custody, possession or control within seven (7) business days of entry of an order memorializing this decision.

An Order in accordance with this decision is being entered concurrently with this decision.