**In re MUY BUENO CORPORATION, d/b/a Sneaker's and d/b/a Joe's Volcano, Debtor.**

No. 00–52245–C.

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

Jan. 9, 2001.

Michael G. Colvard, Martin, Shannon & Drought, San Antonio, TX, for debtor.

Johnny W. Thomas, San Antonio, TX, trustee.

## MEMORANDUM DECISION

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the chapter 7 trustee's Motion to Reconsider this court's Order Granting Motion for Protection by Muy Bueno Corporation in the foregoing matter. Muy Bueno, corporation, filed a voluntary chapter 7 petition on June 8, 2000. Muy Bueno's president and sole shareholder, Mr. Robert Stanton, did not appear at the First Meeting held on July 5, 2000. Instead, one William Thompson appeared as the debtor's representative. When the trustee asked about Mr. Thompson's capacity with the debtor, Mr. Thompson responded: "I am the representative. I worked briefly with Muy Bueno back in

the late 80's."[1] When the trustee asked where Mr. Stanton was, debtor's attorney responded that Mr. Stanton "likes to reside in St. Croix—he does have a house here [in San Antonio] but he is unavailable right now." Concerned that Mr. Thompson was not, in fact, a person with sufficient knowledge and authority to respond under oath on behalf of the corporate debtor at a first meeting of creditors, the trustee reset the first meeting of creditors to July 19, 2000, and requested that Mr. Stanton appear on the debtor's behalf.

At the July 19 meeting, Mr. Stanton did not appear. Instead, Mr. Williams once again appeared, again professing to be the appropriate corporate representative for the debtor. This time Mr. Williams had a document,[2] purporting to authenticate his capacity to speak for the debtor at the First Meeting. Mr. Stanton, in his capacity as an officer, director and shareholder of the corporate debtor, designated Mr. Thompson as the debtor's agent. However, Mr. Williams was no more capable of furnishing the trustee with information about the debtor than he had been the first time around, responding to most of the trustee's questions with "I do not know." As to specific documents relating to the debtor's Petition, Schedules and Statement of Financial Affairs, Mr. Williams told the trustee that those documents were in a warehouse and "were too hot to retrieve."[3] Again, the trustee rescheduled the First Meeting, and again requested that Mr. Stanton appear. The trustee added that, if Mr. Stanton failed to appear, the trustee would file a motion to dismiss the case. Debtor's counsel suggested, in response, that if the trustee had any specific questions to ask Mr. Stanton, the trustee could and should schedule a Rule 2004 examination of Mr. Stanton.[4] Debtor's counsel added that, if money was a problem, he was certain that both Mr. Stanton and the debtor would agree to a non-stenographic Rule 2004 examination. The trustee did not feel the offer to be adequate, and decided to once again re-set the First Meeting, reiterating his insistence that Mr. Stanton be present to answer questions under oath.

The debtor then filed a Motion for Protection, arguing that Mr. Bill Thompson was in fact the duly appointed representative of the debtor, whether the trustee liked it or not, and that the debtor had in fact provided the trustee with all requested information. The debtor also argued

---

1. Apparently Mr. Williams also represents the debtor in pending dram shop litigation. Debtor's attorney informed the trustee that Mr. Williams' was "familiar with some of the operations that Mr. Stanton has aside from Muy Bueno and that's basically why he's here."

2. The authorization is recorded in the "Minutes of the Special Meeting of the Officers, Directors and Shareholders of Muy Bueno Corporation," dated July 14, 2000. Interestingly, the document states that it was created and signed by Mr. Stanton at a meeting held in San Antonio, Texas. Debtor's brief clarifies that Mr. Stanton did not sign the Minutes in San Antonio. Instead, Mr. Stanton participated in the "special meeting" by telephone and faxed his signature to debtor's counsel in San Antonio.

3. The chapter 7 trustee notes in his motion that he has been notified by creditors in Austin that there were numerous transfers made between Muy Bueno Corporation and other corporations belonging to Mr. Robert Stan-

ton. A Turnover Order was signed by a state court on March 13, 1996. Stanton has not responded to that Order and there are now pending arrest warrants issued by the state court for Stanton. There has also been some indication that the state court has determined that all corporations of Mr. Stanton are in actuality one.

4. Specifically, debtor's counsel stated: "Why don't we—why don't you just set him [Mr. Stanton] for a 2004 examination? That way you can ask him for specific documents and you can require him to produce—we have a corporate representative but I can't—I represent the corporation and can't compel a shareholder or an equity owner to appear. I represent the corporation, who has designated a representative that is here. Mr. Stanton I understand could be susceptible to a 2004 examination, formally or informally, or we could do some type of telephonic meeting if you like."

that it was not necessary that Mr. Stanton appear at the third re-set Meeting, and that the proper way to extract information from Mr. Stanton would be by way of a Rule 2004 examination. After all, debtor's motion argued, "Stanton's most current residence has been in Grand Caymen. To require Stanton to appear is not only factually unjustified but economically detrimental."

The court granted the motion for protection. On August 10, 2000, the trustee filed the instant motion to reconsider, asserting that neither he nor any other interested parties had received notice of the debtor's Motion for Protection. Additionally, the trustee argued that the court should compel Mr. Stanton to appear at a re-set First Meeting of Creditors, as he (and not Thompson) was in fact the correct corporate representative for purposes of a First Meeting. The trustee also noted that, in any event, he did not have the funds with which to conduct a Rule 2004 examination. The court set the motion for hearing, and considered both the evidence and the arguments presented by both parties. The court ruled from the bench, reserving the right to issue this decision *ex post.*

## ISSUES

The issue in this case is clear, though its answer is clearly not. When a corporation files for bankruptcy, who should appear on behalf of the corporate debtor at the First Meeting of Creditors? The issue has subparts of course. One question involves qualification—who is qualified to appear as debtor's representative at such meetings. Another involves necessity—can a trustee insist not only that the representative be qualified but also that the representative be "knowledgeable"? Or is the trustee compelled to accept whomever the corporate debtor has designated to appear at the First Meeting, and to obtain any other information the trustee thinks is needed from other persons by way of a separately scheduled Rule 2004 examination?

## ANALYSIS

The standards for reconsideration of a court order are familiar. Rule 60(b) (made applicable in bankruptcy via rule 9024 of the Federal Rules of Bankruptcy Procedure) describes three grounds that might be applicable here:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); [or] (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party....

FED.R.CIV.P. 60(b). Naturally, a party that fails to "explicitly or implicitly assert fraud, newly discovered evidence, mistake, inexcusable neglect, or any of the other matters pertinent to a Rule 60(b) motion," is not entitled to reconsideration under Rule 60(b). *Matter of Colley,* 814 F.2d 1008, 1010 (5th Cir.1987). Here, the trustee argues essentially that the court made a mistake, and ought to undo the protective order. Deciding the motion thus requires a more searching examination of sections 341 and 343 of the Bankruptcy Code, and of Rules 2004 and 9001(5) of the Federal Rules of Bankruptcy Procedure. The parties had few disagreements about the evidence, which shows that, in fact, the corporation *did* purport to designate Mr. Thompson as its corporate agent for purposes of appearing at the First Meeting of Creditors, and did so by means of a special meeting of the officers, directors and shareholders of the corporation. It is also clear from the evidence that Mr. Thompson held no officer or director position with the company, and had little or no knowledge of the actual day-to-day dealings of the corporation. Mr. Stanton, on the other hand, *was* both an officer and director of the corporation, and was the one person who *would* have had actual knowledge of the day-to-day operations and dealings of the corporation. The case will turn, then,

on the court's construction of the applicable statutes and rules.

### 1. Who must appear for the corporate debtor?

■ Section 341(a) of the Bankruptcy Code provides: "Within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors."[5] *Id.* The debtor's attendance at the § 341 creditors' meeting is required: "The debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title." 11 U.S.C. § 343(a). But, when a corporation is the debtor, who is it that "shall appear and submit to examination" per the directives of the statute? Corporations, after all, are legal persons but can only speak and act through their authorized agents and representatives. Corporations are obviously legal persons entitled to file bankruptcy petitions, and are denominated as "the debtor" once the petition is filed, but the statute's language clearly contemplates that it is a human being that is actually examined at the meeting of creditors. The statute says nothing about which human being it is that must appear to be examined under oath when the debtor is a corporation.

■ The Federal Rules of Bankruptcy Procedure fill this gap.[6] Rule 9001(5) says that, whenever any act is required to be performed by a debtor, or when it is necessary to compel the attendance of a debtor *for examination,* and the debtor is not a natural person, then,

... if the debtor is a corporation, "debtor" includes, *if designated by the court,* any or all of its officers, members of its board of directors or trustees or of a similar controlling body, a controlling stockholder or member, *or any other person in control*

FED.R.BANK.P. 9001(5) (West Group pamphl. ed.2000) (emphasis added). Rule 9001(5) has a long lineage, dating back to Section 7(b) of the Bankruptcy Act, as amended by the Chandler Act of 1938. That section provided that "[w]here the bankrupt is a corporation, its officers, the members of its board of directors or trustees or of other similar controlling bodies, its stockholder or members, or such of them as may be designated by the court, shall perform the duties imposed upon the bankrupt by this Act." Chandler Act of 1938, § 7, sub. b.[7] Rule 901(6) of the 1973 Bankruptcy Rules, which superceded § 7(b) of the Act, presaged the current rule, with the only difference being the earlier rule's use of the word "bankrupt" instead of "debtor." Per the rule, it is the *court* that selects the appropriate representative to appear at the meeting, and *not* the corporate debtor. The rule permits the court to designate more than one representative to appear, with a view to settling on whomever it is that is actually "in control" of the corporate entity ("or any other person in control"). The rule does *not* give the corporate debtor or its principals the right to designate who shall appear at the first meeting, and certainly does not give the debtor the right to designate as agent someone who knows little or nothing about the debtor's recent affairs

---

**5.** Both the chapter 7 and chapter 11 trustees have inherent authority to convene meeting of creditors. *In re Petit,* 172 B.R. 706 (Bankr. D.Me.1994), *affirmed,* 182 B.R. 57, *affirmed and remanded* 80 F.3d 29. The guidelines governing the conduct of a § 341 Meeting are found in Bankruptcy Rule 2003.

**6.** The scope of §§ 341 and 343 are governed by the Federal Rules of Bankruptcy Procedure. H.R. No. 95–595, 95th Cong., 1st Sess. 332 (1977), U.S.CODE CONG. & ADMIN.NEWS 1978, p. 6288. Of particular relevance to this

case are Rules 2004(a) and 9001(5). Rule 9001(5), which defines a corporate or partnership "debtor," is discussed in this section. Rule 2004(a), which addresses post– § 341 examinations, is addressed in the next section.

**7.** The editor's note to this section states: "Rule 402 together with Rules 108 and 205 impose substantially all the duties prescribed for the bankrupt by § 7(a)." 1A COLLIER ON BANKRUPTCY § 7(b), at 962 (14th ed.1977).

and activities. *See In re Gaslight Club, Inc.*, 782 F.2d 767, 771 (7th Cir.1986) (citing Rule 9005(1) for the proposition that the bankruptcy court has authority to designate the debtor's representative); *In re Burkman Supply, Inc.*, 217 B.R. 223, 225 (W.D.Mich.1998) ("[Debtor] was designated as the debtor pursuant to Bankruptcy Rule 9001(5) by order of the Bankruptcy Court"); *In re Save More Foods, Inc.*, 96 B.R. 1, 2 (D.D.C.1989) ("The consequence of designating Littlejohn a 'debtor' under Rule 9001(5) is to require him, under § 343 of the Bankruptcy Code, to 'appear and submit to examination under oath' at a meeting of creditors convened under § 341 of the Bankruptcy Code"); *In re Northwest Associates, Inc.*, 245 B.R. 183, 186 (Bankr.E.D.N.Y.1999) ("[Rule 9001(5) ] contemplates that any party 'in control' of the Debtor in question can be designated to testify on behalf of a corporate Debtor"); *In re Nixon Electric Supply, Inc.*, 85 B.R. 988, 988 (Bankr.W.D.Tex.1988) (acknowledging that the individual sought to be examined was neither a "person in control" or "allowed to represent the debtor"); *In re Little's Motor Co., Inc.*, 53 B.R. 635, 637 (Bankr.N.D.Ala.1985) (recognizing that the trustee can recommend to the court that the court designate a certain individual as the "debtor" for purposes of being examined on behalf of the corporate-debtor; but also recognizing that designation decision rests within the discretion of the court); *see also In re Robert Landau Associates, Inc.*, 50 B.R. 670, (Bankr. S.D.N.Y.1985); *In re Saroca Corp.*, 46 B.R. 533, (Bankr.D.Me.1985); *In re Iorizzo*, 35 B.R. 465 (Bankr.E.D.N.Y.1983).

■ The historic function of creditors' meetings, and the explicit reference to "person in control" found in the rule both confirm that, regardless who might be *qualified* to appear as a corporate representative as a matter of corporate law, the person who is actually *required* to appear as a matter of bankruptcy law may not be the one selected for that purpose by the corporate debtor—and may not even be a person otherwise recognized as a qualified representative under non-bankruptcy law. *See In re Northwest Associates, Inc.*, 245 B.R. 183, 186 (Bankr.E.D.N.Y.1999) (person in control found to be persons who lacked a formal relationship with the corporation); *In re Ron San Realty Co.*, 457 F.Supp. 994, 996 (S.D.N.Y.1978) (person could be designated by court to perform duties imposed on "person in control" even though he had never been an officer, director or employee, or had any formal relationship with debtor); *see also* 3 COLLIER ON BANKRUPTCY, ¶ 343.02[3] (15th ed.2000) ("[n]ormally, if the debtor is a corporation or partnership, the individuals in control of and most knowledgeable about the entity should appear for examination. For a small corporation this may be the controlling stockholder; for a larger corporation this may include the chief executive officer and the chief operating officer").

■ The structure of the Code (and its implementing rules) is designed to assure that creditors, the court and court-appointed representatives will have ready and early access to correct information about the corporate debtor's affairs. A corporate debtor outside bankruptcy will naturally seek to disclose as little as possible to a pursuing creditor in state court litigation, but that tactic is unavailing in bankruptcy, where the debtor is saddled with an *affirmative duty* to both voluntarily disclose and to cooperate. *See* 11 U.S.C. §§ 343, 521(1), (3). It is for this reason that neither state nor federal discovery rules are analogous (and so are not helpful to the debtor's position). The court, at the end of the day, is free to decide who is the "person in control" and to then designate that person to appear, with a view to assuring creditors that they have been furnished with the person most likely to be knowledgeable about the debtor's affairs. The evidence in this case confirms that that person is definitely not Mr. Thompson, and that it definitely is Mr.

Stanton.[8] To the extent that the court has not yet designated Mr. Stanton pursuant to Rule 9001(5), it does so now.

### 2. Is there any basis for excusing or waiving Mr. Stanton's appearance at the First Meeting of Creditors?

■ Debtor argues that, even if Mr. Stanton is the "person in control" that can be compelled to appear at the § 341 meeting, his appearance should nonetheless be waived or excused. Indeed, courts (including this court) have, on occasion, "excused" a debtor from appearing at the first meeting, notwithstanding the facially mandatory language of section 343 that the debtor "shall appear." *See In re Lucio,* 251 B.R. 705 (Bankr.W.D.Tex.2000) (holding that a personal representative of the debtor's probate estate was permitted to appear on behalf of the deceased debtor at the creditors' meeting); *In re Chandler,* 89 B.R. 1002 (N.D.Ga.1988) (finding that where good cause exists, a bankruptcy debtor's failure to attend the § 341 meeting does not constitute *per se* grounds for *sua sponte* dismissal); *In re Owens,* 221 B.R. 199 (Bankr.W.D.Tenn.1998) ("§ 343's requirement that the debtor attend the § 341 meeting of creditors is not obligatory in every instance. If ... 'good and sufficient cause' can be shown why the debtor's attendance should be excused and credible and persuasive evidence of the same is presented to the court, the debtor's attendance at the first meeting may be waived. If, on the other hand, either the cause or the evidence is lacking, 'shall' in § 343 will be read as mandatory and the debtor will not be excused from attending the § 341 meeting."); *see also In re O'Donnell,* 43 B.R. 679 (Bankr.E.D.Penn. 1984); *In re Edwards,* 2 B.R. 103 (Bankr. S.D.Fla.1979); *In re Stewart,* 14 B.R. 959

(Bankr.N.D.Ohio 1981); *In re Sullivan,* 30 B.R. 781 (Bankr.E.D.Penn.1983); *but cf. In re Fulton,* 52 B.R. 627 (Bankr.D.Utah 1985) (holding that the debtor's duty to attend the meeting of creditors and submit to examination is mandatory) (citing *In re Rust,* 1 B.R. 656, 657, 5 B.C.D. 1182 (Bkrtcy.M.D.Tenn.1979)). Under the case law, then, Mr. Stanton might still be excused from the meeting if "good cause" is shown.

But even if such an exception can be recognized, Stanton cannot demonstrate "good cause" on these facts. The primary argument offered for waiving or excusing Stanton's appearance at the § 341 meeting is that there is another method available to the trustee for examination—to wit, a Rule 2004 examination—that would cause less inconvenience to Stanton, who would otherwise have to travel to San Antonio from the Caymans. Mere inconvenience rarely qualifies as "good cause" under the case law, however, especially when it is an inconvenience occasioned solely by a person's chosen lifestyle. Illness, a recent job that requires a person to be out of the city, a military person being stationed overseas—all of these have often served as ready examples of good cause. Simple inconvenience resulting from a person's preference for living in the Cayman Islands simply fails to ring the good cause bell.

Stanton's argument also misapprehends the role of Rule 2004, and its interplay with Section 341. Certainly it is true that the scope of examination permitted at a meeting of creditors and at a Rule 2004 examination are essentially coterminous. *See* Fed.R.Bankr.P. 2004(a)–(b). They differ greatly, however, in their *purpose.* The difference traces back to their historical roots.[9] *See In re Astri Inv., Manage-*

---

**8.** It is not necessary on the facts of this case to go so far as did the courts in *Northwest Associates* and *Ron San Realty.* Mr. Stanton is not only a "person in control" within the meaning of Rule 9001(5) but is also an authorized agent of the corporate debtor under

applicable nonbankruptcy law, as he is an officer of the corporation.

**9.** The most notable difference between modern-day creditors' meetings and those of yesteryear is that section 7(a)(9) of the Act did not require debtors to attend the first meeting of

*ment & Securities Corp.,* 88 B.R. 730 (D.Md.1988).[10]  *Collier's* Fourteenth Edition explained this difference:

> [I]t is the duty of the bankrupt under [§ 7 of the 1898 Bankruptcy Act] to appear and submit to an examination at the first meeting of his creditors and at the hearing upon objections, if any, to his discharge. It may be and usually is necessary, however, to examine the bankrupt at other times during the proceedings. Section 7(a)(10) provides that the bankrupt may be examined "at such other times as the court shall order," and this provision when read in conjunction with § 21(a) gives the court ample power to order the examination at times other than the first meeting or at the hearing as to discharge. Bankruptcy Rule 402(1) [1973] requires the bankrupt to appear for examination at the first meeting of creditors "and at such other times as ordered by the court."
>
> . . . .
>
> The bankrupt, after adjudication, is subject to examination at any time during the pendency of the proceedings and until their final disposition. Thus he may be examined for the purpose of making up the schedules, to discover

concealed assets, or to lay a foundation for objections to a discharge. An examination of the bankrupt may be had even after discharge in order to ascertain whether he has concealed property form his trustee.

2 Collier on Bankruptcy ¶ 21.08 (14th ed.1977). The § 55 meeting served as a sort of preliminary investigation into the debtor's estate, sometimes negating further inquiry while at other times giving rise to additional suspicions that could be more fully explored in a § 21(a) examination.

Throughout the period from 1898, when sections 7(a), 21(a) and 55 of the Act were first enacted and amended, through 1973, when the Bankruptcy Rules superceded the procedural guidelines of the Act,[11] the examination of the debtor at the first meeting of creditors and subsequent examinations of the debtor were always treated in this separate and distinct fashion. *See* §§ 7(a), 21(a) and 55 (1898 Bankruptcy Act); *cf.* Bankruptcy Rules 204, 205, 402 and 901 (1973). In 1978, when Congress completely re-wrote the bankruptcy law, it carried forward into the Code the very policies and procedures re-

---

creditors if it was more than 150 miles from their residence or principal place of business and the debtor was to be reimbursed for travel expenses if the meeting was held outside of the debtor's city. *See* 1A Collier on Bankruptcy ¶ 7.15 (14th ed.1977).

10. The court in *Astri* furnished this helpful and insightful look at the origins of the creditors' meeting:

> The first English bankruptcy statute was enacted in 1542, during the reign of Henry VIII, and gave to the Lord Chancellor of England and other members of the Privy Council the power to summon for examination persons indebted to, or holding property owned by, the bankrupt. See 34 and 35 Hen. VIII, ch. 4 (1542–43), quoted in 1 H. Remington, A Treatise on the Bankruptcy Law of the United States 9–10 (2d ed.1915). That first statute was "concerned wholly with fraudulent debtors, not at all with those who are simply unfortunate," Remington, supra, at 8, and was quasi-criminal in nature. The purpose of the examination

of witnesses was to uncover all of the assets of the bankrupt for distribution to creditors. *Id.* at 737. In 1869, for the first time in England, all debtors became subject to an examination. *See id.* Under the 1869 bankruptcy statute, "the bankruptcy was required to 'produce a statement of his affairs to the first meeting of creditors, and submit to be publicly examined ...'" *Id.* (citations omitted). Public examination of the debtor in England has continued to the present, and is traditionally "regarded as one of the most important aspects of the bankruptcy process, for it is intended to serve one of the main purposes of public policy associated with bankruptcy law, namely the protection of the public by gathering as much information as possible about the debtor and his affairs." *Id.* (quotations and citations omitted). Ever since the Bankruptcy Act of 1800, creditors' meetings have play a similarly essential role in U.S. bankruptcy law. *See id.*

11. *See* 1A Collier on Bankruptcy ¶ 7.155 (14th ed.1977).

garding the examination of debtors that had by then become standard practice in bankruptcy under the Act and Rules. *See Allegheny International Credit Corp. v. Bowman*, 60 B.R. 423, 424–25 (S.D.Tex. 1986) (citing legislative history); *In re Astri Inv., Management & Securities Corp., supra* at 741 ("[t]he meeting of creditors . . . in Chapter 7 and 11 proceedings, . . . is the only mandatory hearing").[12]

On a prior occasion, a judge writing for this court held that a § 341 meeting should not turn into a Rule 2004 examination. *See Nixon Electric*, 85 B.R. at 989 ("The first meeting of creditors is not a substitute for a Bankruptcy Rule 2004 examination"). The point is well taken, so far as it goes, but adds nothing relevant to the issue *sub judice*. The point is not whether a § 341 meeting can serve as a substitute for a Rule 2004 examination (the issue in *Nixon Electric*) but whether a Rule 2004 examination is an acceptable substitute for a § 341 meeting (the issue presented here).

■■■■ Like putting the donkey in front of the cart, a § 341 meeting properly precedes the conduct of a Rule 2004 examination. Only after the § 341 meeting is conducted and the debtor has voluntarily submitted to examination under oath can parties be expected to shoulder the additional expense of conducting a Rule 2004 examination for a further, more searching examination. The Rule 2004 examination acts as a "supplement" to the § 341 meeting. *See In re Carbone*, 254 B.R. 1, 4 (Bankr.D.Mass.2000) ("Rule 2004 of the Federal Rules of Bankruptcy Procedure . . . supplements the § 341 examination by providing for further examination of the debtor by a creditor or other party in interest").

But a supplement is not a substitute. The § 341 meeting provides the trustee and creditors with a cheap, inexpensive, and convenient tool to get an overall feel for the bankruptcy estate, and to do so early in the case. It is especially important in a chapter 7 case that the trustee, who, after all, bears the fiduciary responsibility for the administration of the estate, be able to compel the attendance of a person in control to testify at this all-important first hearing.[13] A Rule 2004 examination is by contrast more expensive and more inconvenient for the trustee. In most cases, a Rule 2004 examination will never be conducted, either because it proves to be unnecessary—the trustee obtained enough information at the first meeting to complete his or her job—or because it proves cost-prohibitive. Thus, it can never be "good cause" for excusing a needed party from appearing at the § 341 meeting that the trustee could instead conduct a Rule 2004 examination, because the latter is never a substitute for the former.

In the further alternative, the debtor argues that if Stanton is the only representative of the debtor that can appear on behalf of the debtor, Stanton's appearance should still be waived because requiring Stanton to appear would be "economically detrimental." This argument is but a variant of Stanton's "inconvenience" argument, and carries no greater weight. Even if it is "economically detrimental" for Stanton

---

**12.** Rule 2004 plays an essential, but entirely different, role in bankruptcies. The Rule 2004 examination continues to be championed as the "basic discovery device in bankruptcy cases." COLLIER ON BANKRUPTCY, ¶ 2004.01 (15th ed.2000). It is an examination that can be initiated independent of any pending contested matter or adversary proceeding. *See id.; see also In re Duratech Indus., Inc.*, 241 B.R. 283, 289 (E.D.N.Y. 1999); *In re Continental Forge Co.*, 73 B.R. 1005, 1007 (Bankr.W.D.Pa.1987); *In re Table Talk*, 51 B.R. 143, 145 (Bankr.D.Mass.1985).

**13.** The § 341 meeting also cuts down on the time the court would otherwise have to spend supervising Rule 2004 examinations. *See* 3 COLLIER ON BANKRUPTCY ¶ 343.03 (15th ed.2000). ("An examination conducted under section 343, therefore, does not required a motion to the court, and such examination should be conducted directly by the interested party, but at the meeting of creditors scheduled pursuant to section 341.").

to travel to San Antonio, that is his problem and not the trustee's. The courts could never fashion a sensible rule that excused "persons in control" from appearing at first meeting when those persons *elected* to reside outside the forum of the case's filing.

### CONCLUSION

Stanton is the only individual who properly qualifies under Rule 9001(5) to be designated to speak for the debtor at the § 341 first meeting of creditors, and he is so designated by order of the court. Suggesting that the trustee conduct a Rule 2004 examination instead of a § 341 examination does not constitute "good cause" for not appearing at the § 341 meeting. Likewise, debtor's argument that Mr. Stanton will suffer "economic detriment" by traveling to San Antonio to attend the first meeting of creditors does not satisfy the "good cause" test. Accordingly, trustee's Motion to Reconsider is hereby GRANTED and Stanton is directed to appear at a rescheduled § 341 meeting.

SO ORDERED.